### HOWARD *v.* STATE.

(Division B. May 30, 1938.)

[181 So. 525. No. 33129.]

Roberts & Smith, of Cleveland, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**Anderson, J.,** delivered the opinion of the court.

Appellant was indicted, tried and convicted in the circuit court of Bolivar county of the crime of murder, and sentenced to the penitentiary for life. From that judgment she prosecutes this appeal.

Appellant is a negro woman thirty-seven years old. She was convicted of the murder of Carrie McWilliams, also a negro woman. Carrie and her husband, John McWilliams operated a combined grocery store and restaurant facing highway No. 61 in Bolivar county; the business was owned by John, and he also owned a garage with an eight foot alley between the two buildings. Their home was to the rear of these buildings. About 9:30 o'clock on Sunday night, August 15, 1937, appellant shot and killed Carrie McWilliams and Carrie Floyd, her helper in the grocery store and restaurant. She was indicted for the murder of Carrie McWilliams alone.

Appellant had been riding in an automobile with Chester Hardy and four others, making six in all; the lights

on the automobile went out; they drove up to the Mc-Williams place to have the lights repaired, and while this was being done appellant went into the grocery store and restaurant to purchase sandwiches and a coca cola; the only persons in the store were Carrie McWilliams and Carrie Floyd. As to what took place in there was testified to alone by appellant, there being no other eyewitnesses. The occupants of the automobile and John McWilliams were on the outside at or near the garage and not far from the front door of the store and restaurant. Appellant and the two women in the store had known each other for several years, and there was no illwill between them. Appellant ordered sandwiches and a coca cola and laid fifty cents on the counter. Her attention was attracted to something in the front part of the building that caused her to turn away and look in that direction. When she looked around the fifty cents was gone; she asked Carrie Floyd, who was near the counter at the time, to return it to her. Carrie Floyd denied having the money and called appellant "a damned liar." Appellant replied that she was "another;" that she had the money because nobody else was near the counter at the time it disappeared. Thereupon Carrie Floyd walked behind the counter, reached down and picked up something which she held behind her, and started toward appellant demanding that appellant refrain from charging her with taking the money. Appellant thereupon repeated what she had said in that respect. Carrie Floyd then struck appellant on the head with some kind of a bottle. At this juncture Carrie McWilliams ran up and hit appellant with her fists. All three of the women were about the same size. Appellant retreated toward the front door of the building, both women were following her and beating her, one with the bottle and the other with her fists. Appellant had a .38 caliber pistol in her purse, she pulled it out and shot and killed both of her assailants. Appellant further testi-

fied that the reason she shot was that she was afraid her assailants would either kill her or do her some great bodily harm; that she did not have the pistol for the purpose of using it on any one; that her possession of it at the time came about in this way—she had lent a friend $3.00, who put up the pistol as security for its repayment. He had never repaid the loan. She took the pistol with her that night in her purse because she was afraid to leave it in the home where she was living, her apprehension being that somebody would steal it in her absence.

The witnesses for the state were the six persons who were in and around the garage and the front of the store when the killing took place. They testified, in substance, that they saw Carrie McWilliams and Carrie Floyd immediately after the killing and observed them and their surroundings; that neither was armed with a bottle or any other kind of weapon; that Carrie Floyd had in her hand a half eaten hamburger, and had no weapon about her.

We are of the opinion that under the law the evidence made a case of murder, manslaughter, or not guilty of either. In other words, any one of those verdicts would have been supported by substantial evidence.

Appellant assigns and argues the giving of the following instruction for the state as error:

"The Court instructs the Jury for the State that even though you may believe, from the evidence in this case, that the defendant and the deceased had some kind of a personal difficulty inside the cafe of John D. McWilliams, and that the deceased was actually engaged in assaulting the defendant with her fists and feet, and was being beaten without excuse or justification, this does not and cannot, in law, excuse or justify the defendant in taking the life of the deceased.

"The Court charges the Jury that flight is a circumstance from which guilt might be inferred."

It will be observed that the instruction is in two paragraphs, and although given by the court as one instruction it is in fact two instructions, each dealing entirely with a separate and distinct feature of the case. Appellant was being assaulted and beaten by two persons each about her size and strength. It was a question for the jury whether or not under the circumstances appellant believed and had good reason to believe that she was in danger of the loss of her life or great bodily harm from such beating with hands and feet as the only weapons. Bailey v. State, 174 Miss. 453, 165 So. 122; Hill v. State, 94 Miss. 391, 49 So. 145. The first paragraph of the instruction as applied to this case was, therefore, erroneous, although not reversible error when taken in connection with other instructions given for the state and appellant. The second paragraph of the instruction, however, was not only error but was calculated to mislead the jury. The evidence tended to show that immediately after the killing appellant fled and was in hiding until the next night when she was arrested. The jury were told, in effect, that they could infer guilt from flight alone; in other words, could disregard all the other evidence in the case and find appellant guilty because she was a fugitive. Flight is a circumstance which may be considered by the jury in connection with all the other material evidence in the case in determining guilt but it is not substantive evidence of guilt since it is consistent with innocence as well as guilt. Standing alone it is insufficient to establish guilt. Tatum v. State, 142 Miss. 110, 107 So. 418; People v. Herbert, 361 Ill. 64, 196 N. E. 821; People v. MacCullough, 281 Mich. 15, 274 N. W. 693; Walters v. State, 24 Ala. App., 370, 135 So. 600.

No proper manslaughter instruction was requested or given. The instructions given the state did not exclude such an instruction. The trial court, therefore, could not be put in error in that respect.

By instruction No. 5 given for appellant the jury were

told that if from all the evidence they had a reasonable doubt as to whether the killing was done in the heat of passion "or proceeded from the principle of self-defense you should find the defendant not guilty." By this instruction the jury were informed, in effect, that if the killing was manslaughter they should acquit the defendant. That gave appellant more than she was entitled to.

Reversed and remanded.