271 So.2d 735 (1973)
Johnny CRAFT
v.
STATE of Mississippi.
No. 47022.
Supreme Court of Mississippi.
January 2, 1973.
Roland C. Lewis, Chester A. Henley, Jr., Jackson, for appellant.
A.F. Summer, Atty. Gen., by John M. Kinard and Edwin Snyder, Sp. Asst. Attys. Gen., Jackson, for appellee.
SMITH, Justice.
Johnny Craft was convicted of murder in the Circuit Court of Simpson County and sentenced to life imprisonment. He has appealed here from that conviction and sentence.
*736 Craft's defense at the trial was self-defense. The substance of his version of the events that culminated in the homicide was as follows:
The deceased, one Michaels, and several others, including Craft's brother, were in Craft's home. There had been some drinking of intoxicants. After a while several of the men decided to go outside. As the deceased went out the door, Craft observed that he took a knife from his pocket. Although at that time there had been no difficulty between Craft and Michaels, Craft "felt" that Michaels might be "about to start something" with the knife. When he saw Michaels take the knife from his pocket, Craft, who was also on the way out, went back into his bedroom, armed himself with his pistol, and then went out into the yard where Michaels, Craft's brother, and others had already gone. Michaels and Craft's brother then got into a fight in which the former was attempting to use his knife. Craft intervened to protect his brother. Michaels cut Craft on his arm and had him pinned against a hedge. Michaels had raised his knife to stab Craft again and it was then that Craft shot Michaels to prevent the latter from stabbing him. The testimony of others present is confusing and conflicting and, of course, Craft's version may or may not have been true and it became a question of fact for the jury whether Craft had acted in necessary self-defense in shooting Michaels.
In this situation, the State requested and was granted the following instructions:
The Court instructs the Jury for the State that the law of self defense as defined in these instructions does not imply the right to attack. If you believe from the evidence the defendant armed himself with a deadly weapon and sought the deceased with the formed felonious intention to invoking a difficulty with the deceased, or brought on, or voluntarily entered into any difficulty with the deceased with the felonious intent to kill and murder the deceased, then the defendant cannot invoke the law of self-defense no matter how imminent the peril in which he found himself.
The Court instructs the Jury for the State that in order to justify a homicide on the plea of self-defense there must be something shown in the conduct of the deceased indicating a present intention to kill or to do some great personal injury to the slayer, and imminent danger of such intention being accomplished; and mere fears or beliefs are insufficient. The danger must be such as to lead a person reasonably to believe that the killing was necessary to prevent the deceased from killing him or doing to him some great bodily harm.
It is a rare case indeed, and this is not one of them, in which it is proper to give an instruction to the jury cutting off the right of a defendant in a murder prosecution to defend himself. Under the facts in evidence the giving of either of the quoted instructions was fatally prejudicial and requires reversal of the conviction and a remand of the case for a new trial. See Coleman v. State, 179 Miss. 661, 176 So. 714 (1937).
The State also obtained an instruction on flight which was erroneous and appears to be a paraphrase of the instruction condemned in Quarles v. State, 199 So.2d 58 (Miss. 1967). The principal difference in the Quarles' instruction and that given here is that the instruction here omits the requirement, contained in the Quarles' instruction, that the jury must find "beyond a reasonable doubt that he (Craft) did kill (Michaels) with the intent to kill and murder" (Michaels). This omission is hardly an improvement nor does it save the instruction granted in the present case from the defects noted in Quarles. In Quarles this Court said:
This instruction should not have been given. It is confusing in form, capable *737 of misleading the jury, and begins with an apparent assumption that Quarles "fled and remained in flight and hiding for a time after he killed Oliva Collins." Nor do we consider that the concluding portion of the instruction sufficiently removes this defect. It is "unexplained flight" from which, under certain circumstances, an inference of guilty knowledge may be drawn.
The language of this Court in Eubanks v. State, 227 Miss. 162, 85 So.2d 805 (1956), is pertinent here. In Eubanks, this Court said:
"* * * Instructions on flight, if given at all, should be used only in cases wherein that circumstance has considerable probative value. Moreover, such an instruction is primarily argumentative... ."
As the case must be retried, we think it well to notice some of the other grounds for reversal assigned and argued.
The remarks of the District Attorney in his address to the jury are attacked and characterized as having been improper and prejudicial. We have recognized that considerable latitude must be allowed counsel in the argument of cases, and that this includes prosecuting counsel in criminal cases. We reiterate, however, that the enthusiasm of the prosecutor does not justify transgressing reasonable bounds of fairness nor warrant appeals to passion and prejudice. Nor is it permissible to introduce under the guise of argument extraneous and prejudicial matter. The remarks now criticized were not objected to when made and were not, in themselves, sufficiently prejudicial to require reversal, when standing alone, especially since there was no timely objection to them.
There is another aspect of the conduct of the prosecutor, however, that must be noticed. Appellant properly complains of the cross-examination of the woman with whom he had been living openly for fifteen years and whom he regarded as his lawful common-law wife. Whether she was or was not was hardly an issue to be injected into the prosecution of appellant for murder. The prosecutor, in his examination of this defense witness, continued to suggest the she and appellant were living together unlawfully, referring to their relationship repeatedly (and erroneously) as "bigamous." Obviously, a murder trial is not the place to raise an issue as to whether the defendant is living with a woman bigamously. This examination was highly improper.
It is an unfortunate but known fact that many law-abiding citizens, having observed the commission of a crime, will deny having done so or will fail to report it for no other reason that their fear of being subjected as witnesses to needless embarrassment. Trial courts should employ every means at their command to prevent the browbeating and unnecessary public humiliation of witnesses, most of whom would certainly prefer to be elsewhere and who have been brought to the stand by the compulsory process of the court. It is a tragic commentary on conditions of the present day that fear on the part of potential witnesses of being thus mistreated is one of the major difficulties confronting law enforcement authorities in the successful prosecution and conviction of criminals. The irony of the situation is, perhaps, that the lawyer who thus abuses his position defeats his own purpose, as the reaction of judges and juries alike to the mistreatment of a helpless witness by an attorney is one of revulsion and distaste. The appellant and the witness were not, of course, living "bigamously," but if they had been, that fact was wholly irrelevant to any issue in the case. A defendant on trial for murder should not be burdened by the gratuitous injection of this type of irrelevant and prejudicial matter. To say the least, bigamy is a criminal offense for which appellant was not on trial. To suggest that both appellant and his wife had committed it was wholly impermissible.
*738 While the witness here was a defense witness, every witness is entitled to the same consideration and if it is not accorded, it should be required by the court. The right of legitimate cross-examination of witnesses is essential to the administration of justice, but this does not extend to the asking of questions designed merely to embarrass or humilitate the witness, and which are irrelevant to the issues in the case.
Other errors assigned are of such character that they are not likely to recur upon retrial of the case. The conviction will be reversed and the case remanded for a new trial.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, INZER and ROBERTSON, JJ., concur.