455 So.2d 785 (1984)
Charles PANNELL
v.
STATE of Mississippi.
No. 54226.
Supreme Court of Mississippi.
September 5, 1984.
*786 Omar D. Craig, Arlen B. Coyle, Oxford, for appellant.
Bill Allain, Atty. Gen. by Bill Patterson, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Lafayette County wherein the appellant, Charles Pannell, was convicted of the crime of aggravated assault upon his stepson, Jason Pannell. The sole issue presented by this appeal relates to the granting of an instruction requested by the State concerning the flight of a person from the scene of a crime. We reverse.
The facts surrounding the shooting are in dispute. All that is certain is that on May 23, 1981, Charles Pannell drove to the home of his former wife, Dorothy, and stepson, Jason Pannell. An incident occurred in which shots were fired and Jason Pannell was hit with numerous shotgun pellets from a shotgun admittedly fired by the defendant. Just how this incident came about is not relevant for purposes of this appeal. It is sufficient to state that Charles Pannell testified that he fired only after being fired upon by Jason Pannell and that Jason denied having fired any weapons. Furthermore, both Charles Pannell and his sister, Julia Waldrip, testified that she was with him at the time of the incident. Jason stated that he did not see any passenger in the defendant's truck; however, this may be explained because Mrs. Waldrip testified that she got on the floorboard of the truck when the hostilities began.
The facts that are material to this appeal occurred after the shooting and are completely uncontradicted. Charles Pannell testified that following the shooting he dropped off Mrs. Waldrip at her house and went directly to another sister's house with whom he had been staying. Once there, he immediately phoned the sheriff's office to report the incident. Pannell then made an unsuccessful attempt to contact his attorney. The following morning, after consultation with his attorney, Pannell voluntarily surrendered to the sheriff.
At trial, the State requested and was granted the following instruction:
Flight is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the defendant, Charles Pannell, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the defendant.
Since 1928 when this Court first addressed the law of so-called flight instructions in the case of Ransom v. State, 149 Miss. 262, 115 So. 208 (1928), there has been a clear jurisprudential evolution. A review of our State's legal history on this subject makes the wisdom of that evolution irrefutable.
In Ransom v. State, supra, our Court addressed the problem for the first time. Ransom was indicted for murder and convicted of manslaughter. From the facts recited in the opinion, it appears that Ransom intervened in a dispute between two others and fired a pistol, killing one Red Henry. Thereafter Ransom and the other combatant fled the scene. An instruction similar to the one now at bar was given to the jury. The opinion states that Ransom *787 argued that his explanation of his flight was uncontradicted and therefore the presumption which might arise from the instruction would be improper. Interestingly and importantly the Court did not set forth any explanation for Ransom's flight. The only mention of an explanation was in the form "It is argued that the appellant's flight is explained." Therefore, it is not apparent what the explanation was, if indeed there was one. The opinion went on to hold:
As we understand the law of flight, it is to be considered in connection with all the other evidence in the case, and the jury will determine from all the facts whether this flight was from a conscious sense of guilt, or whether it was caused from other things, and give it such weight as the jury thinks it is entitled to, in connection with all the other evidence in the case.
149 Miss. at 268, 115 So. at 210.
In Sims v. State, 164 Miss. 16, 142 So. 468 (1932), Granville Sims was convicted of murdering his wife. Sims gave two conflicting accounts of the shooting but did not explain his subsequent flight. This Court held that it was not error to give a flight instruction and that the circumstance of flight could be considered in conjunction with other evidence.
In Howard v. State, 182 Miss. 27, 181 So. 525 (1938), this Court held that an instruction which read:
The Court charges the jury that flight is a circumstance from which guilt might be inferred
was calculated to mislead the jury into believing that flight was substantive evidence of guilt. The opinion stressed that because flight is a circumstance "consistent with innocence as well as guilt" it must be considered with the available material evidence, if at all. Howard marks the point at which our state's law on this issue begins to evolve.
Eubanks v. State, 227 Miss. 162, 85 So.2d 805 (1956) is the first of the "modern" cases to address the issue. Clyde Eubanks was convicted of receiving stolen property. The jury was instructed as follows:
The Court instructs the jury for the State of Mississippi that unexplained flight is a circumstance from which an inference of guilt may be drawn and considered with all the other facts and circumstances connected with the case.
We there held:
The facts did not warrant the giving of this instruction. Appellant gave an entirely plausible and uncontradicted explanation of the reason why he was absent from the county for five weeks. The sheriff's testimony to the effect that he could not locate appellant does not negative the uncontradicted status of appellant's testimony in this respect. Instructions on flight, if given at all, should be used only in cases wherein that circumstance has considerable probative value. Moreover, such an instruction is primarily argumentative. Alexander, Mississippi Jury Instructions (1953), Sec. 2341. However even if the facts here had warranted an instruction on flight, this one is erroneous. It is practically a peremptory statement to the jury that appellant fled and that the jury could consider this with other facts in making an inference of guilt. It should have been qualified so as to be related to the facts of this case, and also to tell the jury it must first find the facts before it can use flight along with other circumstances to support an inference of guilt. 1 Alexander, Ibid, Sec. 2342.
227 Miss. at 168, 169, 85 So.2d at 806.
We next addressed this issue in Quarles v. State, 199 So.2d 58 (Miss. 1967). Dotson Quarles was found guilty of manslaughter in connection with the death of Oliva Collins. Quarles was arrested in Chicago six days after discovery of Ms. Collins' body in her Tallahatchie County home. It appeared from the evidence that Quarles had not left Tallahatchie County until at least five days after Ms. Collins' death, and further, he was unaware of the discovery of her body at the time he left the county. *788 The trial court granted the following instruction:
"The Court instructs the jury for the State of Mississippi that flight is a circumstance from which as a matter of law the inference of guilty knowledge and fear may be inferred and if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Dotson Quarles, fled and remained in flight and hiding for a time after he killed Oliva Collins, if you do believe beyond a reasonable doubt that defendant did kill Oliva Collins, and if you further believe from the evidence in this case beyond a reasonable doubt that he did kill Oliva Collins with the intent to kill and murder Oliva Collins, you may take such flight or hiding into consideration along with all the other evidence in this case in determining the guilt or innocence of said defendant, Dotson Quarles."
Upon these facts we held:
This instruction should not have been given. It is confusing in form, capable of misleading the jury, and begins with an apparent assumption that Quarles "fled and remained in flight and hiding for a time after he killed Oliva Collins." Nor do we consider that the concluding portion of the instruction sufficiently removes this defect. It is "unexplained flight" from which, under certain circumstances, an inference of guilty knowledge may be drawn.
199 So.2d at 61.
Finally, in Craft v. State, 271 So.2d 735 (Miss. 1973), Craft was convicted of the murder of Michaels. We reversed and held that the flight instruction was erroneously given. The facts in the opinion do not recite any attempt at flight by Craft; furthermore, the instruction was fraught with the same error as that condemned in Quarles v. State, supra.
From review of all of the aforementioned cases, it is clear that the law of flight instructions has significantly developed since the time of Ransom v. State when flight from the scene of a crime was dangerously close to being an element of a crime, or at least a substitution for proof of the accused's involvement.
As we stated in Howard, supra, flight is a circumstance consistent with innocence as well as guilt. By requiring the jury to first find the facts of the case before considering the defendant's flight, we prohibit a factor only marginally probative of guilt to rise to the level of the material element of the crime. Such a rule in no way hampers law enforcement and can only result in preventing juries from being confused, thereby lessening the prospect of convicting innocent persons who may have, for whatever reason, fled the scene of a crime.
Now, the application of the law to Charles Pannell. Since the date of Eubanks, supra, we have consistently held that it is only unexplained flight which merits a flight instruction. Eubanks, supra; Quarles, supra, Craft, supra. That being the case, there is absolutely no foundation in the record before us on which to base a flight instruction. As previously stated, Charles Pannell testified that following the shooting he dropped off his sister at her home and went directly to another sister's home with whom he had been staying. Once there, he immediately phoned the sheriff's office to report the incident. Pannell then made an unsuccessful attempt to contact his attorney. The following morning after Pannell had the opportunity to discuss the matter with his attorney, and after that attorney spoke with the sheriff, Pannell voluntarily surrendered. Pannell's explanation for his departure from the scene of the shooting was wholly uncontradicted and certainly not incredulous or unbelievable. Charles Pannell's flight, if it was such, was completely explained and under the facts of this case no flight instruction was warranted.
As the rule has been stated in Eubanks, supra; Quarles, supra; and Craft, supra, a flight instruction is to be given only in cases wherein that circumstance has considerable probative value. In the instant case the dispute primarily concerns *789 whether Pannell's claim of self defense was valid. There is no probative value in considering flight under these circumstances.
Based on all of the foregoing, we hereby reverse Charles Pannell's conviction of aggravated assault and remand this case to the circuit court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING and HAWKINS, JJ., concur.
HAWKINS and ROBERTSON, JJ., specially concur.
PATTERSON, C.J., PRATHER and SULLIVAN, JJ., dissent.
HAWKINS, Justice, specially concurring:
I concur in the reversal of this case for the simple reason that a so-called "flight" instruction, in every case I have read, amounts to a comment upon, and emphasis of one particular part of the evidence. We have always condemned any instructions which did this.
A general instruction authorizing the jury to consider the conduct of the accused can cover this feature, and give the state full opportunity to address it in closing argument.
ROBERTSON, Justice, specially concurring:
If I regarded our rules regarding evidence of flight as sound, I would vote to affirm. Pannell offered an explanation for his "flight" but not one which the jury was bound to accept. On this and other issues, the accused's credibility is for the jury to pass on.
My concern is that we allow evidence of flight to be presented to the jury at all, much less an instruction such as that under consideration here.
To be sure, our law has long recognized that unexplained flight is a circumstance suggesting guilt. The opinion of Justice Dan M. Lee traces this notion through our cases. That history reflects a gradual restriction of the use of flight evidence and instructions. My notion of the reason for this trend is a recognition in the collective subconscious mind of this Court that the premise upon which the rule has been based is flawed.
Flight is said to suggest a guilty conscience. The notion derives from the ancient proverb "The wicked flee when no man pursueth, but the righteous are as bold as a lion". Proverbs 28:1.
That the proverb provides a less than accurate description of reality was recognized in Alberty v. United States, 162 U.S. 499, 16 S.Ct. 864, 40 L.Ed. 1051 (1896). The facts of that case make the point. There involved was a black Indian, who was a former slave, charged with the commission of a murder in Arkansas in 1879. The trial judge, incredibly to my mind, had instructed the jury
The truth is  and it is an old scriptural adage that  `the wicked flee when no man pursueth, but the righteous are bold as a lion.' Men who are conscious of right have nothing to fear. They do not hesitate to confront a jury of their country, because that jury will protect them; it will shield them, and the more light there is let in upon their case the better it is for them. 162 U.S. at 509, 16 S.Ct. at 868, 40 L.Ed. at 1056
Although refusing to hold the instruction erroneous per se, the Supreme Court did recognize that
it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that "the wicked flee when no man pursueth; but the righteous are bold as a lion." Innocent men sometimes hesitate to confront a jury,  not necessarily because they fear the jury will not protect them, but because they do not wish their names to appear in connection with criminal *790 acts, are humiliated at being obliged to incur the popular odium of an arrest and trial, or because they do not wish to be put to the annoyance or expense of defending themselves. 162 U.S. at 511, 16 S.Ct. at 868, 40 L.Ed. at 1056 More recently, some courts have continued to "doubt the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime". Wong Sun v. United States, 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963); Bailey v. United States, 416 F.2d 1110, 1114-1115 (D.C. Cir.1969); State v. Walker, 226 Kan. 20, 595 P.2d 1098, 1100 (1979).
The flaw in the premise that flight suggests a guilty conscience is its inconsistency with human nature and experience.
There are in 1984 reasons consistent with innocence why rational suspects may flee. One may be lack of confidence in the system. While administration of perfect justice should remain the heaven for which we reach, we are no more than realistic when we acknowledge that our reach exceeds our grasp. Our system is yet imperfect. An infinite variety of prejudices infect the fallible human beings who administer our laws. While we may have made great progress toward excision of imperfections from our system, we should not condemn a suspect who out of his or her life experiences does not perceive it so.
Moreover, a surface familiarity with Perry Mason stories reminds of the truth that circumstantial evidence may often point to the innocent. Many such innocents lack confidence that they can successfully endure the slings and arrows of arrest, incarceration, interrogation and prosecution  and accordingly flee.
Offering the defendant the opportunity to explain his flight compounds the felony. If the accused is innocent, his explanation will frequently subject him to highly prejudicial cross-examination. How can he afford to say before a jury that he fled because he lacked confidence that he would be treated fairly in the court system? Being scared in the face of circumstantial evidence is a perfectly human reaction on the part of an innocent, but admission of such leaves one vulnerable at the hands of a skilled prosecutor on cross-examination.
Reflection on the matter calls to mind many other problems with flight evidence and instructions, not the least of which is the practical question, what is flight? Where the evidence is in conflict or susceptible of more than one interpretation, the accused may in practical effect wind up being tried for flight, not the crime charged in the indictment.
A realistic assessment of flight evidence suggests that it will almost never be necessary to obtain a conviction of the guilty. On the other hand, its admission may seriously endanger the prospects for acquittal of the innocent.
Without belaboring the point, I would hold that evidence of flight should never be admitted. In the context of this case, I would hold that neither Model Jury Instruction No. 104.15 nor any other flight instruction should ever be given. I would reverse.
PRATHER, Justice, dissenting:
I respectfully dissent from the majority view in this case. The majority bases reversal of this case upon the ground that factually a flight instruction should not have been given in this case.
I address first the factual basis in this case for the granting of this instruction. Here the defendant, who was a prior law enforcement officer, admittedly shot at the victim with his shotgun twice and knew that he hit the victim. The defendant denied being the instigator of the shooting, and his testimony was corroborated by his sister, Julia Waldrip.
On the contrary, the victim Jason Pannell testified to a different version. Jason stated that the defendant exited from his truck, threatened to kill him, fired two shots from a .22 caliber pistol followed by two shots with a .16 gauge shotgun. He did not see Julia Waldrip in the truck and fired no weapon. However, Ms. Waldrip *791 got on the floorboard of the truck and could see nothing thereafter.
The physical evidence supported Jason Pannell's testimony as to the location of the spent shells, and the evidence corroborated the fact that Charles Pannell had access to the pistol owned by another.
Nevertheless, the defendant left the scene, reported the incident by telephone even though he passed by the sheriff's office, attempted to contact his attorney, and upon failure to reach his attorney, left in another vehicle, a borrowed car, for his residence in the state of Tennessee. Knowing who represented the defendant on legal matters, the sheriff called the defendant's attorney to ask about the defendant's whereabouts. Upon his attorney's advice, the defendant did return and contacted the sheriff. This testimony, although disputed, was before the Court.
Section 99-17-35, Mississippi Code Annotated (1972) sets forth the requirement for the trial judge to "instruct the jury upon the principles of law applicable to the case" in writing. Instructions should be granted only if they are applicable to the facts developed in the case. Norman v. State, 385 So.2d 1298 (Miss. 1980).
These facts were sufficient for the court to submit the determination of an "unexplained" flight to the jury. The jury, not this Court, is the factfinder. Flight is to be considered with all other evidence in the case, and from all facts the jury will determine whether the fleeing was from a conscious sense of guilt or explainable cause and give it such weight as the jury thinks it deserves in determining guilt or innocence. In Ransom v. State, 149 Miss. 262, 115 So. 208 (1928), this Court said the flight instruction is to be considered in connection with all the other evidence in the case to determine "whether (the) flight was from a conscious sense of guilt, or whether it was caused from other things, and give it such weight as the jury thinks it is entitled to, in connection with all the other evidence in the case." (115 So. at 210).

II.
Addressing now the form of the instruction sub judice, we have formerly stated that in determining whether to grant a flight instruction, the instruction should have: (1) probative value, (2) qualified as to the facts of the case (not abstract), (3) qualified to tell the jury it must find the facts before it can use flight, along with other circumstances, to support an inference of guilt. Further, this Court has stated it is "`unexplained flight' from which, under certain circumstances, an inference of guilty knowledge may be drawn." Craft v. State, supra, Quarles v. State, supra. Eubanks v. State, 227 Miss. 162, 85 So.2d 805 (1956).
Working with the above guidelines, in 1977 the Circuit Court Judges of Mississippi have adopted the Mississippi Model Jury Instructions containing a flight instruction, No. 104.15 (1977). This instruction granted sub judice follows that model with adaptation to the facts of this case and removal of its abstract terms.
The model instruction omits the above element (3) which states that the instruction be "qualified to tell the jury it must find the facts before it can use flight, along with other circumstances, to support an inference of guilt." This Court held in Quarles, supra, that this was a necessary qualifying part of a flight instruction. The model instruction omits this requirement.
As the circuit judges have submitted these model instructions to this Court, and we have approved them, I would now abandon this qualifying phrase and hold that it is not necessary to find the facts of the charge before the element of flight can be considered in determining guilt or innocence. Rather, I hold that the model instruction form is proper.
Therefore, in the case sub judice I would find the form of the instruction proper and hold that no error was committed by the trial court in granting this instruction for the jury's factual determination.
PATTERSON, C.J., and SULLIVAN, J., join this dissent.