503 So.2d 277 (1987)
Larry Wayne CLARK
v.
STATE of Mississippi.
No. 56605.
Supreme Court of Mississippi.
February 25, 1987.
Charles W. Easterling, Marks, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Deirdre D. McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, C.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
In the Circuit Court of Quitman County, Mississippi, Larry Wayne Clark was convicted of the murder of John D. Hunt and sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections. He challenges his conviction upon three grounds:
I. Refusal to give the circumstantial evidence requirements in instructions S-1 and C-15;
II. Granting the "flight instruction"; and
III. Overruling his motion for a new trial.

FACTS
John D. Hunt died from a knife wound in the stomach received on May 7, 1983, at the Chaney Hollis Cafe in Quitman County, Mississippi.
*278 Larry Wayne Clark and his brother, Patrick, had gone to the cafe to buy hamburgers. While waiting for the hamburgers to cook a fight broke out in another room between John Hunt and Terry Harris. The Clark brothers went into that room to see what was going on.
According to witness Annie Mae Hunt, aunt of the victim, her other nephew Sammy Hunt separated the two fighters and was engaged in keeping Harris away from John Hunt. John Hunt was not hurt in the fight. Several people were milling around arguing and talking when suddenly Larry Wayne Clark made a stabbing motion at John Hunt, who grabbed his stomach and fell back into a chair. Clark then left the cafe and Annie Mae Hunt saw a knife on the floor where Clark had been standing. She wrapped the knife in a towel and gave it to Town Marshal Leo Parrish, who gave it to Quitman County Sheriff Billy Cole.
Ronnie Weir testified that he had worked that day with Larry Wayne Clark and had seen Clark sharpening a knife just like that one found at the cafe.
Ruthie Mae McNeal confirmed that Harris and Hunt had fought. She then saw Clark and Hunt standing face to face after the fight and when she noticed Clark leaning over Hunt, she pulled Clark back away from him. Clark immediately left the cafe. McNeal did not see a knife or anyone cut or stab Hunt.
Patrick Clark, Larry Wayne's brother, said that he and Larry Wayne went to see what was going on when the fight broke out. He said Larry never approached the people who were fighting. Patrick never saw Larry with a knife nor did he see him stab anyone. They left the cafe because their hamburgers were ready and for no other reason. That night Larry Wayne Clark left the area and Patrick did not see him again until January of 1985, when he was returned to Mississippi after being arrested in Florida.
Defense counsel failed in his effort to suppress the testimony of Lake Wales, Florida, City Detective Melvin Waldron. Waldron testified that on May 4, 1984, he arrested Clark as a burglary suspect and gave him a verbal Miranda warning. Clark subsequently signed a written standardized Miranda form.
As a part of his normal routine Waldron sent Clark's fingerprints through the National Crime Information Center and shortly thereafter was notified that Mississippi had warrants on Clark for homicide. Waldron informed Clark about the warrants and as Waldron was turning to leave the room Clark said "That him and two other guys killed a man in a bar fight in Mississippi, and he left the State." Wadlron admitted that Clark did not say who he was supposed to have killed, where in Mississippi the killing occurred or when the killing supposedly took place. Detective Waldron made no effort to question Clark about the homicide in Mississippi.

I.

WAS IT ERROR TO REFUSE TO GIVE CIRCUMSTANTIAL EVIDENCE INSTRUCTIONS?
Clark insists that the language "... to the exclusion of every other reasonable hypothesis consistent with innocence, then you shall find the defendant not guilty" should have been included in the burden of proof instructions because this was purely a circumstantial evidence case.
We have reversed cases in which (1) the State's proof consisted entirely of circumstantial evidence; and (2) the trial court failed to grant a circumstantial evidence instruction. Henderson v. State, 453 So.2d 708, 710 (Miss. 1984); Wooldridge v. State, 274 So.2d 131, 133 (Miss. 1973) (no direct evidence of any kind linking defendant with the crime); Gilleylen v. State, 255 So.2d 661 (Miss. 1971) (circumstantial evidence instruction required where "conviction rests on circumstances and not direct proof"); Kendall v. State, 217 So.2d 35, 36 (Miss. 1968) (case "entirely one of circumstantial evidence").
However we will not reverse a conviction based upon both direct and circumstantial evidence. Billiot v. State, 454 So.2d 445, 461-62 (Miss. 1984); Bullock v. *279 State, 391 So.2d 601, 606 (Miss. 1980). The determination to be made here is was the testimony of Annie Mae Hunt direct evidence. She did not see the knife in Clark's hand and cannot say that Clark stabbed Hunt. But when asked to demonstrate what had happened Annie Mae Clark did say
All right, so about that time, me and Ruby was talking. Okay, and I turned, and as I turned, he grabbed him around and hit him, and when he hit him, John D. did like this (Indicates) and fell back behind the table, and was holding his stomach. And, he got up from the table with his hand, and he pulled his shirt up and the blood was just there, and when he looked up, he looked at Larry Clark, and say, "Why did you do that?" Then, he set back down. And, during the time when Larry was standing there, this other little table here, that's where the knife was, on the floor. That's when I picked it up and shut it up and put it in my pink and white towel and put it in my pocket, and took it over and gave it to Leo.
In Bunkley v. State, 495 So.2d 1 (Miss. 1986), this Court said:
The prevailing standard as to the necessity for granting a circumstantial evidence instruction is set forth in Keys v. State, 478 So.2d 266 (Miss. 1985), and Mack v. State, 481 So.2d 793 (Miss. 1985). "A correct statement is that the instruction must be given where the prosecution is without a confession and wholly without eyewitnesses to the gravamen of the offense charged." Keys at 267. (Emphasis added).
495 So.2d at 4.
Here we not only have eyewitness testimony, we have the testimony of Detective Sgt. Waldron, an admission by Clark, which operates to render unnecessary the circumstantial evidence instruction. See Mack v. State, 481 So.2d 793 (Miss. 1985); Reed v. State, 229 Miss. 440, 91 So.2d 269 (1956). The eyewitness testimony when coupled with Clark's admission viewed in light of the prevailing caselaw in Mississippi mandates that we affirm the trial court in its refusal to grant a circumstantial evidence instruction.

II.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ALLOWING THE "FLIGHT INSTRUCTION" TO BE GIVEN TO THE JURY?
The instruction complained of is set out below:
Flight is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the defendant, Larry Wayne Clark, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts, whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the defendant, Larry Wayne Clark.
The argument here is based upon our decision in Pannell v. State, 455 So.2d 785, 787-88 (Miss. 1984), and the evidence of flight in this case had no substantial probative value.
In his ruling allowing the instruction to be given to the jury the trial court stated:
In the present case before this Court at this time, there has been no explanation of the reason for the defendant absenting himself from this jurisdiction and from this state for whatever length of time he was gone, to the best of the Court's understanding from the testimony, since immediately after the alleged crime until the date he was apprehended in, I believe, January of 1985. Also, it is the Court's opinion that under the circumstances the absence of the defendant would be of considerable probative value in this case. Under the circumstances and based on the law as the Court interprets it in Pannell and the other cases cited, the Court has determined that Instruction S-3, which is the *280 instruction on flight, should be given, and the Court will give S-3.
The evolution of our law on the "flight instruction" has been well documented by Justice Dan M. Lee in the case of Pannell v. State, 455 So.2d 785 (Miss. 1984). The result of this evolution is the rule that a flight instruction may only be given in cases where the defendant's flight (1) is unexplained and (2) where the circumstance of that flight has considerable probative value. Pannell at 788. In Fuselier v. State, 468 So.2d 45, 56, 57 (Miss. 1985), this Court stated that "An instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge."
The first criterion of the Pannell test is met in this case in that "There was no attempt by the defense to explain this flight." Pharr v. State, 465 So.2d 294, 304 (Miss. 1984). The evidence reflects that Clark's whereabouts were unknown from the date of the killing on May 7, 1983, until he was apprehended in Florida on May 4, 1984.
The record here is sufficient to meet the second prong of the Pannell test as well. In this case the circumstance is certainly one that has considerable probative value regarding the primary issue of guilt or guilty knowledge. The circumstances and witness testimony coupled with unexplained flight is considerably probative intending to show a conscious sense of guilt and flight to avoid punishment.
When measuring the facts of this case by the standard set out in Pannell, Pharr, and Fuselier, the trial court acted properly in granting the flight instruction.

III.

DID THE TRIAL COURT ERR IN OVERRULING LARRY CLARK'S MOTION FOR A NEW TRIAL?
In his brief and in his rebuttal brief Clark renews the first two contentions as reasons to grant the new trial. He sets out three other grounds in support of his motion. However, no argument or authority is offered in support of these grounds. The third assignment of error is not even remotely addressed.
It profits no one that we repeat what is written above concerning assignments I and II, and we will not do so. As to the remainder of the assignment and contentions in the motion not supported by argument or authority, we are not required to consider them. We have held, "There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court." Branch v. State, 347 So.2d 957, 958 (Miss. 1977). "It is the duty of counsel to make more than an assertion, they should state reasons for their propositions, and cite authorities in their support... ." Johnson v. State, 154 Miss. 512, 122 So. 529 (1929). Numerous cases support the position that an unsupported assignment of error will not be considered. Hunter v. State, 489 So.2d 1086, 1090 (Miss. 1986); Kelly v. State, 463 So.2d 1070, 1072 (Miss. 1985); Redmond v. State, 457 So.2d 1344, 1346 (Miss. 1984); and many others.
On numerous occasions we have set forth the standard to be applied in ruling on denial of a motion for a new trial. Recently, in Burt v. State, 493 So.2d 1325 (Miss. 1986), citing Pharr v. State, 465 So.2d 294, 302 (Miss. 1984), this Court held:
Under our established caselaw, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence. May v. State, 460 So.2d 778, 781 (Miss. 1984); Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
Burt at 1328.
In Pharr, supra, citing Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983), this Court held:
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. *281 (Citation omitted). Any less stringent rule would denigrate the constitutional power and responsibility of the jury and our criminal justice system.
Pharr at 302.
There is no merit to this assignment of error.
The conviction of murder and sentence of life imprisonment are affirmed.
CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON, and GRIFFIN, JJ., concur.