KITCHENS, Justice,
concurring with part I and dissenting from part II:
¶ 50. Because I believe that the flight instruction should be abolished, I respectfully dissent from the Randolph majority’s conclusion that the flight instruction in this case was properly given to the jury.
¶ 51. The philosophical justification for a flight instruction is a belief that fleeing from a crime scene is proof of a guilty conscience. Pannell v. State, 455 So.2d 785, 789 (Miss.1984) (Robertson, J., specially concurring). But, as the United States Supreme Court has noted, there is a plethora of reasons an innocent person might flee the scene of a crime:
[I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that “the wicked flee when no man pursueth, but the righteous are bold as a lion.” Innocent men sometimes hesitate to confront a jury, not necessarily because they fear the jury will not protect them, but because they do not wish their names to appear in connection with criminal acts, are humiliated at being obliged to incur the popular odium of an arrest and trial, or because they do not *1197 wish to be put to the annoyance or expense of defending themselves.
Alberty v. United States, 162 U.S. 499, 509, 16 S.Ct. 864, 40 L.Ed. 1051 (1896) (internal citations omitted).
¶ 52. Over time, this Court has narrowed the circumstances under which the State may be given a flight instruction. For more than two decades, we have held that prosecutors could obtain a flight instruction only if “that flight is unexplained and somehow probative of guilt or guilty knowledge.” Reynolds v. State, 658 So.2d 852, 856 (Miss.1995). We held that flight by the accused must be “highly probative” of the facts of that particular case. Fuselier v. State, 702 So.2d 388, 390 (Miss.1997) (Fuselier II).
¶ 53. But, even under these restrictions, the instruction has foundered. This Court rarely has held that a flight instruction properly was presented to the jury. See Fuselier v. State, 468 So.2d 45 (Miss.1985) (Fuselier I) (“Here, because the court was aware of an explanation for Fuselier’s flight, which was at that time inadmissible, we are of the opinion that the flight instruction should not have been granted.”); accord Liggins v. State, 726 So.2d 180 (Miss.1998) (“Evidence of flight is inadmissible where, as in this case, there is an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant.”); Banks v. State, 631 So.2d 748, 751 (Miss.1994) (“The present case does not fall within either of the circumstances where a flight instruction would be appropriate or warranted.”); Pannell, 455 So.2d at 788 (“[T]here is absolutely no foundation in the record before us on which to base a flight instruction.”); Craft v. State, 271 So.2d 735 (Miss.1973) (same); Quarles v. State, 199 So.2d 58 (Miss.1967) (“This instruction should not have been given. It is confusing in form [and] capable of misleading the jury....”); Eubanks v. State, 227 Miss. 162, 85 So.2d 805 (1956) (“The facts did not warrant the giving of this instruction. Appellant gave an entirely plausible and uncontradicted explanation of the reason why he was absent from the county for five weeks. The sheriffs testimony to the effect that he could not locate appellant does not negative [sic] the uncontradicted status of appellant’s testimony in this respect. Instructions on flight, if given at all, should be used only in cases wherein that circumstance has considerable probative value. Moreover, such an instruction is primarily argumentative.”) (emphasis added) (internal citations omitted). Often the best-case scenario in cases in which prosecutors request a flight instruction occurs when the evidence of guilt is so overwhelming that the State does not need the flight instruction to sustain a conviction. See States v. State, 88 So.3d 749, 759 (Miss.2012). In other words, more often than not, flight instructions either insert undue prejudice into a trial or are cumulative. Panned, 455 So.2d at 789 (Robertson, J., specially concurring) (“A realistic assessment of flight evidence suggests that it will almost never be necessary to obtain a conviction of the guilty.”).
¶ 54. In Ervin v. State, 136 So.3d 1053 (Miss.2014), a majority of this Court cautioned against the continued use of flight instructions. We held that granting a flight instruction was “dangerous.” Ervin, 136 So.3d at 1060 (quoting Randolph v. State, 852 So.2d 547, 567 (Miss.2002)) (Carlson, J., specially concurring). We further held that:
[W]ith the prosecutors having been duly warned on multiple occasions about the danger of submitting flight instructions, there can be no legitimate hue and cry from the State in the future if this Court ... reverses a criminal conviction based *1198 on the trial court’s improper grant of a flight instruction, which had been improvidently submitted by the prosecutor.
Id. (quoting States, 88 So.3d at 759 (Carlson, P.J., specially concurring)). Although the case was reversed on a ground other than the flight instruction, it is apparent that the Ervin case was tainted by yet another such instruction that contributed nothing to the fairness of the trial.
¶ 55. Even when properly administered, many discerning judges of this Court have been malcontented with prosecutors’ continued reliance on this instruction:
While I agree with the majority that the giving of the “flight instruction” was proper, based on the facts and circumstances of this particular case, and the applicable case law, the use of the flight instruction in this state can be described in one word — “dangerous.” In my years of experience as a trial judge, the flight instruction was very seldom requested by the prosecution and almost never given. It simply is not needed. While evidence of flight might be relevant, no legitimate purpose is served by the jury receiving an instruction from the trial court (which heightens the importance of the evidence in the eyes of the jury) highlighting for the jury the fact that the jury can consider evidence of flight as “a circumstance of guilt or guilty knowledge” when “that flight is unexplained and somehow probative of guilt or guilty knowledge.” The term “unexplained flight” is somewhat nebulous, anyway, and a trial court, by giving a flight instruction, simply puts itself in a position of possibly placing reversible error in an otherwise clean record. If a trial court persists in giving a flight instruction, I suggest that it do so with great caution.
Randolph, 852 So.2d at 567-68 (Carlson, J., specially concurring) (internal citations omitted); accord States, 88 So.3d at 759 (Carlson, P.J., specially concurring) (“[Pjrosecutors tread on thin ice each time they persist in submitting a flight instruction.”); Shumpert v. State, 935 So.2d 962, 973 (Miss.2006) (Carlson, J., specially concurring) (“[T]he State is rolling the dice, as far as potential reversible error, each time it submits a proposed flight instruction to the trial judge for consideration.”); Pannell, 455 So.2d at 789 (Hawkins, J., specially concurring) (“[A] so-called ‘flight’ instruction, in every case I have read, amounts to a comment upon, and emphasis of one particular part of the evidence. We have always condemned any instructions which did this.”).
¶ 56. But the greatest injustice rendered by the flight instruction is not the impact that it has on trials of the guilty but the fact that it can be used to impute guilt to the innocent. The United States Supreme Court in Alberty and this Court in Howard v. State, 182 Miss. 27, 181 So. 525 (1938), opined that there are many reasons for which an innocent person may flee the scene of a crime. In Howard, we averred that flight is a circumstance “consistent with innocence as well as guilt.” Id. at 527. The fact that the innocent have just as much reason to leave the scene of a crime is an unsettling concern that has emerged time and time again throughout our jurisprudence. See id.; Pannell, 455 So.2d at 789 (Robertson, J., specially concurring).
¶ 57. The majority opinion on this issue, authored by Presiding Justice Randolph, does not assert that such instructions offer any redeeming benefit to our system of justice. Anecdotal examples of justices of this Court having approved these instructions in the past, or that prosecutors have not abused these instructions in every case *1199 that heretofore has come before this Court do not convey intrinsic merit to prosecutors’ continued reliance on flight instructions. Such instructions do not lighten a prosecutor’s burden to prove, beyond a reasonable doubt, every material element of an offense. Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 664 (1960). In light of this unchanging burden, what added. benefit do prosecutors receive from the ability to have jurors instructed that they may “infer guilt” from evidence of flight? The majority fails to articulate any tangible benefit the justice system receives to offset the danger this instruction imposes upon the freedom of innocents wrongfully accused of crimes.
¶ 58. Instead, without supporting authority, the Randolph majority avers that “[a] properly drafted flight instruction can serve to protect innocents from jurors who might assign disproportionate weight to flight evidence by instructing jurors that they must consider all other evidence and may not rely solely on flight evidence.” (Maj. Part Two ¶ 28). In effect, the Randolph majority argues that innocent criminal defendants derive benefit from the jury’s being able to “infer guilt” from their flight. With utmost respect, this logic is far fetched and palpably speculative, and its only apparent virtue is to be found in its originality.
¶ 59. Ultimately, flight instructions are antithetical to a trustworthy and efficient justice system. In the best light, the prosecutor’s ability to obtain an instruction allowing for a jury to “infer guilt” from a guilty criminal defendant’s fleeing is cumulative to the State’s obligation to prove every element of an indicted offense beyond a reasonable doubt. This is to say that prosecutors obtain no benefit from a properly given flight instruction. Yet some continue to request flight instructions in cases in which they are not supported by the evidence, resulting in endangerment of otherwise valid convictions. Thus, those prosecutors who persist in asking for flight instructions impose a huge burden on the judicial system in exchange for no reciprocal benefit whatsoever. Most offensively, flight instructions can be used to impute guilt on innocent defendants, a fact which is intolerable to prevailing concepts of fairness and justice. Accordingly, because I would abolish the flight instruction and hold that its use amounts to manifest error, I respectfully dissent from the Randolph majority’s conclusion that the flight instruction in this case was appropriate.
DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.