KITCHENS, Justice,
for the Court:
PART ONE
¶ 1. A jury convicted Vance Drummer of two counts of grand larceny and one count of attempted grand larceny in Lowndes County Circuit Court in 2012. The trial court granted the State’s request for a flight instruction because Drummer, after absconding with the stolen goods, fled from police when they attempted to pull him over after he had run a stop sign in Mathiston, Mississippi. The trial court sentenced Drummer as an habitual offender pursuant to Mississippi Code Section 99-19-81. One of the felony convictions the State used to prove Drummer’s status *1182 as an habitual offender was the felony-fleeing conviction to which he pled guilty as a result of his flight from police in Mathiston. We find that the trial court erred when it sentenced Drummer as an habitual offender. Drummer’s flight from police arose from the same nucleus of operative facts as the larcenies for which he was convicted and therefore should not have been used as a predicate felony pursuant to Section 99-19-81. Accordingly, Drummer’s sentence as an habitual offender is vacated, and we remand this case to the Lowndes County Circuit Court for re-sentencing of Drummer as a nonhabitual offender.
FACTS AND PROCEDURAL HISTORY
¶ 2. The relevant facts are found in the Court of Appeals’ opinion:
While finishing his patrol around 3:55 a.m. on January 2, 2009, Officer Happ Anderson witnessed a vehicle run through a four-way stop in Mathiston, Mississippi, which is located in both Webster County and Choctaw County. The vehicle, a white utility van, was pulling a trailer loaded with a John Deere lawnmower. Officer Anderson turned on his siren and flashed his lights as he pulled behind the van heading west on Highway 82. As Officer Anderson later testified at trial, for the majority of the highway chase, he and the van drove in excess of ninety miles per hour. When the van’s driver, later identified as Drummer, failed to slow down or otherwise respond to his pursuit, Officer Anderson attempted to pass the van. However, each time Officer Anderson tried this maneuver, Drummer swung the trailer into the left lane to prevent Officer Anderson from pulling alongside the van.
Officer Anderson contacted another law enforcement officer in a nearby town. This second officer attempted to stop the van by parking his patrol car in the westbound lanes of the highway. However, Drummer managed to drive around the roadblock and continue along Highway 82. After passing Winona, Mississippi, about forty miles from Ma-thiston, Officer Anderson’s radio signal failed, and he called 911 for assistance. The dispatcher eventually reached law enforcement officers in Leflore County, who were able to set up a roadblock at the county line between Carroll County and Leflore County before the van reached them.
As the van neared the roadblock, Drummer turned into a church parking lot and hit a light pole. Drummer then exited the van and, with the police pursuing him, ran through a pasture and into a utility shed. When Drummer refused to exit the utility shed, the police officers sent a police dog into the shed. Soon after the dog entered the shed, Drummer exited. An inspection of both the van and the utility shed confirmed that Drummer was the only person involved in the chase. The police’s investigation revealed that the white van, trailer, and John Deere lawnmower had been stolen from businesses in Columbus, Mississippi, which is situated in Lowndes County. The white van was stolen from Thompson Truck Center, and the trailer and John Deere lawnmower were both stolen from Agri-Turf, located about a mile down the road from Thompson Truck Center. Police also learned in the course of their investigation that one of Thompson Truck Center’s trucks had sustained interior damage when someone had apparently tried to start the vehicle without a key.
*1183 Drummer v. State, 167 So.3d 1222, 1225-26 (¶¶ 2-4), 2014 WL 3409099, *1 (¶¶ 2-4) (Miss.Ct.App. July 15, 2014).
¶ 3. In 2009, Drummer pled guilty to felony fleeing[1] in Webster County, the county where his flight from police began. Drummer was indicted for two counts of grand larceny and one count of attempted grand larceny in Lowndes County in 2009, but he was not brought to trial on those charges until November 27, 2012.[2] On November 26, 2012, the day before trial began, the State filed a motion to amend Drummer’s indictment to charge him as an habitual offender. The trial court granted the motion and amended Drummer’s indictment the same day that his trial began.[3] One of the two predicate felonies used by the State to establish Drummer’s habitual-offender status was his 2009 felony-fleeing conviction in Webster County.
¶ 4. The Lowndes County jury convicted Drummer of two counts of grand larceny and one count of attempted grand larceny. At the sentencing hearing, the trial court found that the two predicate felonies proven by the State were sufficient to allow the court to sentence Drummer as an habitual offender pursuant to Section 99-19-81. Accordingly, Drummer was sentenced to ten years without the possibility of parole on each count, with the sentences for Counts I and II to run consecutively, and the sentence for Count III to run concurrently with the sentence for Count II. Drummer appealed, and the Court of Appeals affirmed his convictions and sentences.
¶ 5. Drummer petitioned this Court for a writ of certiorari, asking us to review whether the trial court erred in granting the State’s flight instruction and whether it erred in sentencing him as an habitual offender. Having granted Drummer’s petition, we now proceed to analyze those issues.
ANALYSIS
I. The trial court erred in sentencing Drummer as an habitual offender.
¶ 6. Because Drummer’s flight was so inextricably intertwined with his commission of larceny that the trial court found a flight instruction to be proper, it is obvious that the same flight could not be used as a predicate felony “arising out of’ a separate incident for the purpose of habitual-offender sentencing. See Miss.Code Ann. § 99-19-81 (Rev.2007).
¶ 7. Mississippi Code Section 99-19-81 permits the trial court to sentence a defendant to the maximum term of imprisonment for the felony of which he is convicted without the possibility of parole if that defendant has “been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times.... ” To qualify as a predicate felony for purposes of Section 99-19-81, both prior convictions must arise out of separate incidents, meaning they must be separate from each other and from the felony for which the defendant is being sentenced. Drummer contends that his felo *1184 ny-fleeing conviction cannot be used as a predicate felony because it arose out of a common nucleus of operative facts with the larcenies. He argues that the flight from the crime scene was a continuation of the crime of larceny; and, although chargeable as another offense, it is not sufficiently separate from the crime of larceny to be a stand-alone predicate felony.
¶ 8. But before we address Drummer’s specific argument, we must speak to the interpretation of the habitual-offender statute advanced by my esteemed colleague, Justice Coleman. According to him, Section 99-19-81 “contains no requirement that either predicate felony arise ‘out of separate incidents at different times’ from the primary felony. ” Coleman Op. at ¶ 61 (emphasis added). Respectfully, this interpretation twists the language of Section 99-19-81 and constrains the clear intention of the Legislature. In practice, most prosecutors and criminal defense attorneys throughout this State understand that Section 99-19-81 requires both that the predicate felonies be separate from each other and from the felony for which the defendant currently is being sentenced.
¶ 9. More importantly, this Court has stated such on at least two occasions. In Buckley v. State, this Court wrote that “[a] prior offense may be considered under the statute even if [it] occurred on the same day as the instant offense as long as the two charges arose from ‘separate incidents.’” Buckley v. State, 511 So.2d 1354, 1359 (Miss.1987) (emphasis added). And in Crawley v. State, 423 So.2d 128, 129 (Miss.1982), this Court said that “[a]l-though one of the previous offenses occurred on the same day as the one included in the present case, it was separately brought and arose out of a separate incident which occurred at a different time of day which brings it clearly within the statute.” (Emphasis added.) Justice Coleman acknowledges that Crawley supports our interpretation, but dismisses the quoted language as dicta. Coleman Op. at ¶ 67. To the contrary, we view the language as this Court’s interpreting, as a matter of course, the statute’s language the same way that we do. In short, this Court long has held that the predicate felonies must be separate from each other and from the felony for which the defendant currently is being sentenced.
¶ 10. As for Drummer’s argument that his flight from the crime scene was a continuation of the crime of larceny and therefore not sufficiently separate from the larceny to be a stand-alone predicate felony, this Court has held that crimes occurring on the same day may nevertheless be “separate incidents at different times” for purpose of habitual sentencing. Jackson v. State, 518 So.2d 1219, 1220 (Miss.1988). As for when two incidents are sufficiently separate and apart to qualify for enhanced sentencing, the law is mixed. In Riddle v. State, 413 So.2d 737 (Miss.1982), the defendant broke into a trailer home, kidnapped a young girl, took her away, and raped her. He was tried on all three charges and convicted. Id. at 738. The trial court sentenced Riddle to life imprisonment as an habitual offender pursuant to Section 99-19-81, using two of the three crimes for which he was convicted as the enhancing felonies. Id. On appeal, this Court held that the habitual-offender statute was inappropriately applied because all of the offenses “arose out of a single incident.” Id.
¶ 11. In Pittman v. State, 570 So.2d 1205 (Miss.1990), this Court noted that the offenses in Riddle could not be used as predicate offenses for the purpose of habitual-offender sentencing because they “arose out of a common temporal nucleus of operative fact and did not qualify as *1185 separate incidents at different times.” Id. at 1206 (quotation omitted). The Court noted, however, that the law remained unclear when the predicate offenses were sufficiently separate to qualify for habitual sentencing.
We do not write upon a clean slate. We have on several occasions held that “priors” arising out of incidents occurring on the same date may nevertheless be “separate incidents at different times” within Section 99-19-81. Nicolaou v. State, 5[3]4 So.2d 168, 173 (Miss.1988); Jackson v. State, 518 So.2d 1219 (Miss.1988); Burt v. State 493 So.2d 1325,1329 (Miss.1986); see also Crawley v. State, 423 So.2d 128, 129 (Miss.1982). In Burt the defendant broke and entered two dwelling houses at “Route 1, Duck Hill, Mississippi” on June 26, 1980, and we held these separate incidents because Burt had burglarized “separate dwellings occupied by two individuals.” Burt, 493 So.2d at 1329. In Nicolaou the priors concerned a robbery and two kidnappings that took place following the completion of two murders, all of which were a part of the same continuous crime spree but which we held “separate incidents” within Section 99-19-81. Nicolaou, 534 So.2d at 173. These cases, however, afford no bright line rule-telling us how separate the incidents must be, nor how different the times must be.
Pittman, 570 So.2d at 1207.
¶ 12. In Pittman, the Court held that two burglaries of adjacent schools with a common fence on the same illegal excursion qualified as “separate incidents” for purpose of habitual sentencing. Id. Because the two schools were separate places, “notwithstanding their proximity and common use of the auditorium and cafeteria,” the burglaries of the two schools were separate incidents. Id.
¶ 13. Here, we must determine whether Drummer’s flight from police in Webster County was sufficiently separate and distinct from his earlier larcenies and attempted larceny earlier in Lowndes County. The Court of Appeals held that the fleeing and larceny offenses did not “arise from a common nucleus of operative facts.” Drummer, 167 So.3d at 1236-37 (¶ 45), 2014 WL 3409099, at *12 (¶ 45). The crimes were separate because they “occurred at different times of day, occurred in different cities and counties, required different criminal intents, involved different victims, and required different elements of proof.” Id. The Court of Appeals ultimately determined that the larceny had been completed in Lowndes County, and the separate offense of fleeing was not a continuation of the asportation element of larceny. Id. at 1238 (¶ 52), at *14 (¶ 52).
¶ 14. However, this conclusion belies the State’s argument at trial that the flight from police was related to the larcenies. In seeking the flight instruction, the State argued that Drummer “absolutely fled the scene of the crime.” It averred that he was apprehended traveling away from the place from which he had stolen the van and lawn mower. The prosecutor argued that the only explanation for the flight was Drummer’s guilty knowledge of the larcenies that he had committed in Lowndes County. Having taken the position that flight was sufficiently probative of Drummer’s guilt on the larceny charges to warrant a flight instruction, the State could not credibly argue that the flight failed to arise from a common nucleus of operative fact.
¶ 15. Although the larcenies became completed crimes as soon as Drummer had removed the property from the owners’ possession and control, it is well established that “larceny is a continuous offense, and is being committed at all *1186 times during which the thief deprives the owner of the stolen property of possession.”[4] Walker v. State, 188 Miss. 177, 183, 189 So. 804, 806 (1939). Drummer stole the items so he could take them somewhere else, which is what he was in the process of doing when he ran the stop sign in Webster County. He still was engaged in the crime of larceny when he fled police. This was a single chain of events arising out of a common nucleus of operative fact.
¶ 16. The Court of Appeals confronted a similar situation in Bergeron v. State, 60 So.3d 212 (Miss.Ct.App.2011). There, the defendant’s two prior convictions were a burglary and a theft — he broke into a car dealer’s office, stole some keys, and used the keys to steal a car. Id. at 216 (¶ 11). The Court of Appeals found that “[t]here was only one victim and one intent, to steal a car.” Id. Accordingly, the two crimes arose out of the same incident. Id. In so holding, the Court of Appeals acknowledged this Court’s holding in Riddle. There, as recounted above, the defendant committed a burglary and a kidnapping to accomplish a rape. The burglary and kidnapping arose out of the same incident as the rape.
¶ 17. Here, Drummer stole the van and trailer, committing larceny, and fled when confronted by police so that he could get away with larceny. Drummer’s intent with respect to the larceny and the flight was essentially the same: to steal some chattels and not be caught. The felony-fleeing conviction was not available to the State as a predicate felony for purposes of habitual-offender sentencing because it arose from the same incident as the larceny for which Drummer was being sentenced. Drummer must be resentenced as a nonhabitual offender, because “the State is not entitled to a second chance to prove a defendant’s habitual-offender status on remand, because that would violate the prohibition against double jeopardy under the Mississippi Constitution.” Grayer v. State, 120 So.3d 964, 969-70 (¶ 20) (Miss.2013).
CONCLUSION
¶ 18. Because one of Drummer’s predicate felonies used for sentencing him as an habitual offender arose out of the same incident as the crime for which he was being sentenced, the trial court erred in sentencing him as an habitual offender. Accordingly, we vacate Drummer’s sentence and remand the case to the Circuit Court of Lowndes County for resentencing as a nonhabitual offender. The judgment of the Court of Appeals is reversed with respect to the habitual-offender sentencing. The judgment of the Circuit Court of Lowndes County is vacated in part, and the ease is remanded for resentencing.
RANDOLPH, Presiding Justice,
for the Court:
PART TWO
Was a flight instruction proper?[5]
¶ 19. We will overturn a trial court’s giving of a jury instruction only where the trial court abused its discretion. Higgins v. State, 725 So.2d 220, 223 (Miss.1998). Jury instructions must be read “as a whole with no one instruction taken out *1187 of context.” Id. at 223 (quoting Jackson v. State, 645 So.2d 921, 924 (Miss.1994)).
¶ 20. Vance Drummer argues on appeal that the trial court erred in giving the following instruction to the jury in his case:
The Court instructs the Jury that “Flight” is a circumstance from which guilty knowledge may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, VANCE DRUMMER, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the Defendant, VANCE DRUMMER.
¶21. Drummer argues on appeal that the giving of the instruction was improper because there was an independent reason for Drummer’s flight other than guilty knowledge of the larcenies. Drummer argues this Court should consider reasons not presented to the judge or jury below:[6] (1) he fled to avoid the legal consequences of running the stop sign, and (2) the alleged flight was part of the offense of larceny because there can be no larceny without asportation of the goods.
¶ 22. Flight instructions repeatedly have been approved by this Court for almost ninety years, in contrast to the dissent’s claim of rarity. (Kitchens Op. at ¶ 53). See Harrell v. State, 134 So.3d 266, 276 (Miss.2014) (finding no error in the grant of a flight instruction); accord Shumpert v. State, 935 So.2d 962, 970 (Miss.2006); accord Walker v. State, 913 So.2d 198, 234 (Miss.2005); Randolph v. State, 852 So.2d 547, 566 (Miss.2002) (“The trial court did not err in admitting the flight evidence and instructions.... ”); Wall v. State, 718 So.2d 1107, 1112 (Miss.1998) (finding that because the defendant provided no excuse and that his flight was probative of guilty knowledge “the flight instruction was appropriate”); accord Warren v. State, 709 So.2d 415, 420 (Miss.1998); Brown v. State, 690 So.2d 276, 294 (Miss.1996) (finding a flight instruction was warranted); accord Holly v. State, 671 So.2d 32, 37 (Miss.1996); accord Reynolds v. State, 658 So.2d 852, 857 (Miss.1995); Evans v. State, 579 So.2d 1246, 1248-49 (Miss.1991) (finding the defendant’s stated flight excuse of “fear” not a legal explanation in light of the facts and that the trial judge therefore properly granted a flight instruction); Brock v. State, 530 So.2d 146, 153 (Miss.1988) (affirming the grant of a flight instruction); Clark v. State, 503 So.2d 277, 280 (Miss.1987) (“[T]he trial court acted properly in granting the flight instruction.”); accord Pharr v. State, 465 So.2d 294, 304 (Miss.1984); Sims v. State, 164 Miss. 16, 142 So. 468, 469 (1932) (“We do not think that there was error in giving this instruction.”); Ransom v. State, 149 Miss. 262, 115 So. 208, 209 (1928) (affirming a flight instruction); Tatum v. State, 142 Miss. 110, 107 So. 418, 419 (1926) (“The instruction embodies a correct principle of law and was applicable to this case under the evidence.”).
¶ 23. The flight instruction approved by the Court in Tatum has been refined to *1188 that used by the trial judge in this case. In applying caselaw concerning flight instructions, the Ransom court stated:
As we understand the law of flight, it is to be considered in connection with all the other evidence in the case, and the jury will determine from all the facts whether this flight was from a conscious sense of guilt, or whether it was caused from other things, and give it such weight as the jury thinks it is entitled to, in connection with all the other evidence in the case.
Ransom, 115 So. at 210. Flight instructions were reaffirmed shortly after Ransom in Sims, 142 So. at 469.
¶ 24. Our flight-instruction jurisprudence was refined in Pannell v. State, 455 So.2d 785, 788 (Miss.1984), which, in adding the requirement of “unexplained flight,” produced the two-part unexplained- and-probative test still in use today. Prosecutors may obtain a flight instruction only if “that flight is unexplained and somehow probative of guilt or guilty knowledge.” Reynolds, 658 So.2d at 856. “[Fjlight is a circumstance from which an inference of guilt may be drawn and considered along with all the other facts and circumstances connected with the case.” Randolph, 852 So.2d at 564.
¶ 25. In a special concurrence in Pan-nell, Justice Robertson expressed a concern with flight instructions, calling for their abolition, but he failed to draw a single vote. Pannell 455 So.2d at 789-90. Within three months after writing in Pan-nell, Justice Robertson, writing for the Court, affirmed a flight instruction on facts substantially similar to those in this case. Pharr, 465 So.2d at 304. The defendant fled and the police gave chase, ultimately forcing the defendant off the road. Id. Approving the instruction by the trial court that “unexplained flight is a circumstance from which an inference of guilty knowledge may be inferred,” the Court further held that “under the most recent pronouncement of this Court concerning flight, Pannell v. State, and having due regard for the evidence at trial, the instruction was proper.” Id.[7]
¶ 26. The United States Supreme Court addressed Justice Robertson’s concerns long before he penned his special concurrence, observing that an innocent may “hesitate to confront a jury” due to a want to avoid such consequences as the cost of defending a suit or the “popular odium of an arrest and trial.” Alberty v. United States, 162 U.S. 499, 510-11, 16 S.Ct. 864, 40 L.Ed. 1051 (1896). Despite that concern, it nevertheless endorsed the use of flight instructions, finding error only as to the content of the instruction given in Al-berty[8]
While there is no objection to that part of the charge which permits the jury to take into consideration the defendant’s flight from the country as evidence bear *1189 ing upon the question of his guilt, ... [t]he criticism to be made' upon this charge is that it lays too much stress upon the fact of flight, and allows the jury to infer that this fact alone is sufficient to create a presumption of guilt.
Id. Less than a year later, the Supreme Court affirmed a flight instruction-stating that Alberty was not meant to
intimat[e] that the flight of the accused was not a circumstance proper to be laid before the jury as having a tendency to prove his guilt.... Indeed, the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt.
Allen v. United States, 164 U.S. 492, 499, 17 S.Ct. 154, 41 L.Ed. 528 (1896); accord Williams v. State, 667 So.2d 15, 22 (Miss.1996) (“[T]he demeanor, acts, and conduct of the accused, at the time of and subsequent to the crime are in fact relevant, admissible evidence.”).
¶ 27. As the Court of Appeals found, “the record provides no evidence that would support an independent reason or basis for Drummer’s flight from law enforcement.” Drummer v. State, 167 So.3d 1222, 1229 (¶ 17), 2014 WL 3409099, *5 (¶ 17) (Miss.Ct.App. July 15, 2014). The reasons now argued do not explain the sixty-mile excursion from the Hill Country to the Delta, at speeds exceeding ninety miles per hour, followed by a dash into the woods on foot. See Evans, 579 So.2d at 1248-49 (finding the defendant’s stated flight excuse, of “fear” not a legal explanation in light of the facts and that the trial judge therefore properly granted a flight instruction). Drummer’s acts involving a high-speed chase to avoid apprehension by lawful authorities, evasion of a roadblock and multiple officers, fleeing on foot after the stolen vehicle he was driving was incapacitated, and finally hiding in a shed are at least “somewhat probative” of guilty knowledge. Reynolds, 658 So.2d at 857. Confirming he indeed fled, Drummer previously had pleaded guilty to felony “fleeing.”[9] His acts possess sufficient probative value of. his consciousness of guilt that the trial court’s giving of a flight instruction was proper.[10] See id.; Parnell, 455 So.2d at 788.
¶ 28. A flight instruction is not an impermissible comment on the evidence, but it can be a beneficial guide to jurors to not place undue weight on flight alone. When presented with evidence of flight, uninstructed jurors may convict a defendant simply because he fled from the scene of the crime. A properly drafted flight instruction can serve to protect innocents from jurors who might assign disproportionate weight to flight evidence by instructing jurors that they must consider all other evidence and may not rely solely on flight evidence.
¶29. We have reversed the giving of flight instructions for various reasons,[11] *1190 however none of these reasons is present here. According to our law at the time of Drummer’s trial, and according to the proof admitted, evidence of Drummer’s flight was relevant.[12] There was sufficient, admissible evidence of Drummer’s guilt to warrant the giving of the flight instruction in this case. See Williams, 667 So.2d at 22 (“[T]he demeanor, acts, and conduct of the accused, at the time of and subsequent to the crime are in fact relevant, admissible evidence.”). His proffered explanation that he fled to avoid a ticket for running a stop sign was not legally sufficient in light of the facts, and in any event, that explanation was not proffered at trial.
¶ 30. Likewise, Drummer’s argument on appeal that the flight provided the as-portation element of the offense of larceny, thereby providing an independent reason for flight, is without merit. As the Court of Appeals properly stated, “the asportation element of larceny is satisfied by even a slight movement of another’s property after one wrongfully takes possession and control of the property.” Drummer, 167 So.3d at 1229 (¶ 18), 2014 WL 3409099, at 5 (¶ 18)(citing Harbin v. State, 402 So.2d 360, 361-62 (Miss.1981); Mapp v. State, 248 Miss. 898, 162 So.2d 642, 645 (1964)). Even if the crime of larceny was still in progress, all elements of the completed crime were present long before Drummer began his flight from the officer.
¶ 31. The Court of Appeals found no abuse of discretion and neither do we. The judgment of the Court of Appeals concerning the trial court’s giving of the flight instruction is affirmed.
¶ 32. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. COUNT I: CONVICTION OF GRAND LARCENY, AFFIRMED. SENTENCE OF TEN (10) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, VACATED AND THE CASE IS REMANDED FOR RESEN-TENCING. COUNT II: CONVICTION OF GRAND LARCENY, AFFIRMED. SENTENCE OF TEN (10) YEARS, AS A HABITUAL OFFENDER, IN THE *1191 CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, VACATED AND THE CASE IS REMANDED FOR RESENTENCING. COUNT III: CONVICTION OF ATTEMPTED GRAND LARCENY, AFFIRMED. SENTENCE OF TEN (10) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, VACATED AND THE CASE IS REMANDED FOR RESENTENCING.
PART I: WALLER, C.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN PART II AND DISSENTS IN PART I WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., PIERCE AND COLEMAN, JJ. COLEMAN, J., CONCURS IN PART II AND DISSENTS IN PART I WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON AND RANDOLPH, P.JJ., AND PIERCE, J.
PART II: WALLER, C.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., CONCURS IN PART I AND DISSENTS IN PART II WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J. COLEMAN, J., CONCURS IN PART II AND DISSENTS IN PART I WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON AND RANDOLPH, P.JJ., AND PIERCE, J.
APPENDIX OF ALBERTY FLIGHT INSTRUCTION
Alberty v. United States, 162 U.S. 499, 508-09, 16 S.Ct. 864, 40 L.Ed. 1051 (1896).
You take into consideration, in other words, the facts and circumstances which led up to the killing, the facts and circumstances that transpired at the time of the killing; and you do not stop there, but you take into consideration the facts and circumstances as affecting the defendant subsequently to the killing. For instance, you take into consideration the defendant’s flight from the country — his going into another part of the country — as evidence; and you are to pass upon the question as to whether or not he has sufficiently explained away the presumption which the law says arises from flight when a man has taken human life. It is a principle of human nature-and every man is conscious of it, I apprehend — that, if he does an act which he is conscious is wrong, his conduct will be along a certain line. He will pursue a certain course not in harmony with the conduct of a man who is conscious that he has done an act which is innocent, right, and proper. The truth is — and it is an old scriptural adage — “that the wicked flee when no man pursueth, but the righteous are as bold as a lion.” Men who are conscious of right have nothing to fear. They do not hesitate to confront a jury of their country, because that jury will protect them. It will shield them, and the more light there is let in upon their case the better it is for them. We are all conscious of that condition, and it is therefore a proposition of the law that, when a man flees, the fact that he does so may be taken against him, provided he does not explain it away upon some other theory than that of his flight because of his guilt. A man accused of crime hides himself, and then absconds. From this fact of absconding, we may infer the fact of guilt. This is a presumption of fact, or an argument of a fact from a fact.
[[Image here]]
Flight by a defendant is always relevant evidence when offered by the prosecution, and that it is a silent admission by the defendant that he is unwilling or unable to face the case against him. It is in some sense, feeble or strong, as the case may be, *1192 a confession; and it comes in with the other incidents, the corpus delicti being proved, from which guilt may be cumulatively inferred.

. See Miss.Code Ann. § 97-9-72(2) (Rev. 2014).

. Drummer filed a motion for a speedy trial, and the trial court held a hearing on the motion on November 19, 2012. The trial court held that Drummer’s right to speedy trial was not violated, and Drummer has not raised this issue on appeal.

. Counsel for Drummer did not object to the timing of the motion to amend. When asked whether there was any surprise that Drummer was eligible to be tried as an habitual offender, counsel for Drummer stated that there was not.

. In order to obtain a larceny conviction, the State must prove that the criminal defendant had the "intent permanently to deprive the owner of his property.” Lewis v. State, 248 So.2d 805, 806 (Miss.1971); accord Simmons v. State, 208 Miss. 523, 44 So.2d 857 (1950); Hubbard v. State, 41 So.2d 1 (Miss.1949); Littlejohn v. State, 59 Miss. 273 (1881).

. This was raised by Drummer on appeal as Issue' Number One.

. At trial. Drummer presented no testimony and called no witnesses on his behalf. Drummer’s counsel objected to the giving of the flight instruction at trial due to a lack of connection between Drummer and the scene of the larcenies. The trial court determined that, because there was sufficient evidence of flight and because “there’s no explanation offered by the defense or anybody on the defendant’s behalf,” the instruction was warranted.

. On occasion, other justices have expressed concerns, centered on improperly given flight instructions leading to error and reversal in what were otherwise solid convictions. See Randolph v. State, 852 So.2d 547, 567-68 (Miss.2002) (Carlson, J., concurring) (describing flight instructions as "dangerous” and unnecessary, yet joining the majority holding that the instruction "was proper, based on the facts and circumstances” of the case and the caselaw). See also Shumpert v. State, 935 So.2d 962, 973 (Miss.2006) (Carlson, J., specially concurring). He further wrote the trial judge "acted consistent with our case law in granting the.state's proposed flight instruction” and that "[tjhis Court is not prepared to condemn flight instructions.” Id. at 973-74. Though former Justices Hawkins, Carlson, and Robertson expressed concerns with flight instructions, they nevertheless affirmed their use. See id.) Pharr, 465 So.2d 294.

. For the complete content of the Alberty instruction, see the attached Appendix.

. In the presentence investigation, Drummer admitted he had three prior felonies: taking a motor vehicle, possession of stolen property, and felony fleeing.

. This Court approved a flight instruction on facts substantially similar to Drummer’s. In Sims, 142 So. at 469, the defendant
had left the scene of the homicide and was several miles away, and his statement to the officers showed that he had run part of the way; and we think it was competent for the court to instruct the jury that they might consider the circumstance of flight in connection with the other evidence in the case in determining whether the defendant was guilty or innocent.

. For insufficient evidence, see States v. State, 88 So.3d 749, 758 (Miss.2012); Pannell, 455 So.2d at 788; Eubanks v. State, 227 Miss. 162, 85 So.2d 805, 806 (1956). For inadmissible evidence, see Liggins v. State, 726 So.2d 180, 183 (Miss.1998); Fuselier v. State, 468 *1190 So.2d 45, 57 (Miss.1985). For improper form, see Craft v. State, 271 So.2d 735, 736 (Miss.1973); Quarles v. State, 199 So.2d 58, 61 (Miss.1967). See also Ervin v. State, 136 So.3d 1053, 1056-1060 (Miss.2014) (finding (1) guard’s inability to identify Ervin as the prisoner who escaped from a hospital while in his custody and (2) evidence that Ervin hid in an attic to avoid arrest by federal marshals for unknown charges unrelated to the armed robbery for which he was being tried, failed to provide evidentiary support for the giving of a flight instruction); Banks v. State, 631 So.2d 748, 748-49 (Miss.1994) (finding error in the trial judge's excluding evidence of defendant’s explanation for his flight but still granting a flight instruction).

. Our rules of evidence and caselaw allow evidence of unexplained flight if it is somewhat probative and does not fail the Rule 403 balancing test. " ‘Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules.” M.R.E. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403. A trial judge determines if there is sufficient evidence of flight for it to be presented to the jury, and the judge may exclude flight evidence if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant from its introduction. See, e.g., Williams, 667 So.2d at 22. For the application in an instruction context, see Fuselier, 468 So.2d at 57.