# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CP-00373-COA

JAMES DONALD BURKHALTER A/K/A JAMES
BURKHALTER A/K/A JAMES LEE
BURKHALTER

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/2014 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | STONE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES DONALD BURKHALTER (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DENIED APPELLANT'S MOTION FOR POSTCONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 11/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. James Burkhalter appeals the Stone County Circuit Court's denial of his motion for postconviction relief (PCR). Burkhalter argues he was illegally sentenced as a habitual offender. Finding no error, we affirm.

## FACTS

¶2. On December 20, 2011, a grand jury indicted Burkhalter pursuant to a multi-count indictment. Counts I and II of the indictment charged Burkhalter with aggravated assault on

a peace officer in violation of Mississippi Code Annotated section 97-3-7(2)(a) (Supp. 2010). Count III of the indictment charged Burkhalter with unlawful possession of a firearm or a weapon by a convicted felon in violation of Mississippi Code Annotated section 97-37-5 (Supp. 2010).

¶3. On January 14, 2013, the State filed a motion to amend Burkhalter's indictment to reflect his habitual-offender status under Mississippi Code Annotated section 99-19-81 (Rev. 2007). On July 9, 2013, the State filed a second motion to amend Burkhalter's indictment. The State's second motion sought to amend Counts I and II of Burkhalter's indictment to charge simple assault on a peace officer rather than aggravated assault on a peace officer. On September 10, 2013, the circuit court held a hearing on the State's motions and Burkhalter's plea. The circuit court granted the State's motion to amend Counts I and II of Burkhalter's indictment to reflect simple assault on a peace officer. The State then presented evidence to support its motion to amend Burkhalter's indictment to reflect his habitual-offender status.

¶4. As evidence of Burkhalter's habitual-offender status, the State offered Burkhalter's pen pack from two prior felony convictions in Florida. The State's evidence showed that, on December 20, 1989, the Circuit Court of the Fourteenth Judicial Circuit of Bay County, Florida, convicted Burkhalter of the following: (1) committing aggravated assault on April 27, 1989, in cause number 89-875, and (2) committing battery with a deadly weapon on April 28, 1989, in cause number 89-1005. The State's evidence further showed that Burkhalter received a five-year sentence for each crime, with the sentences to run concurrently with one

2

another.  The State informed the circuit court that Burkhalter was sentenced on December 20, 1989, and released on December 16, 1990.  In May 1994, Burkhalter's parole was revoked, and he was sentenced to additional time before being released again on May 16, 1995.

¶5.    Burkhalter's attorney also proffered the following argument as to Burkhalter's prior felonies:

> The issue is, in this case[,] I'm going to just proffer this for the argument, that almost [twenty-five] years ago, . . . Burkhalter got into a fight with his wife where [the police] arrested him and charged him with the first count referenced by the prosecutor.  They arrested him, took him to jail.  He bonded out, went home, and then [he and his wife] got into a fight again, all in a matter of just [eighteen or nineteen] hours.  It overlapped the midnight hour, so it looks like it's different days.

After the proffer, Burkhalter's attorney raised two objections to the State's use of the prior felony convictions to enhance Burkhalter's sentence.  The defense first argued that the prior convictions arose out of the same common nucleus of operative fact and, therefore, failed to satisfy the requirements of section 99-19-81.  In addition, Burkhalter's attorney objected to the remoteness of the prior convictions since they occurred in 1989.

¶6.    In response to the defense's objections, the State contended that the evidence of Burkhalter's prior felony convictions satisfied section 99-19-81's requirements for habitual-offender status.  The State argued that Burkhalter's two prior felonies occurred at different times and on different dates; the convictions possessed different cause numbers; and Burkhalter served at least a year on each sentence.  As the record reflects, Burkhalter committed the aggravated-assault offense about eighteen or nineteen hours before he

committed the aggravated-battery offense. The record also reflects separate prosecutions for the offenses, as demonstrated by the two separate cause numbers. In addition, the record shows the convictions constituted two distinct offenses with differing elements.

¶7. Over the defense's objection to the use of Burkhalter's two prior felony convictions, the circuit court granted the State's motion to amend Burkhalter's indictment to reflect his habitual-offender status. Burkhalter's amended indictment thus reflected his December 20, 1989 Florida convictions for aggravated assault and battery with a deadly weapon. The amended indictment also reflected that each prior conviction carried a sentence of five years in the custody of the Florida Department of Corrections.

¶8. As previously discussed, the circuit court also granted the State's motion to amend Burkhalter's indictment to reflect two counts of simple assault on a peace officer rather than two counts of aggravated assault on a peace officer. Following the amendments to his indictment, Burkhalter entered a plea of guilty to Count III for unlawful possession of a firearm or a weapon by a convicted felon. In response to Burkhalter's guilty plea to Count III, the State decided not to proceed on Counts I and II of the indictment for simple assault on a peace officer.

¶9. In an order entered September 10, 2013, the circuit court found that Burkhalter understood and had been fully advised of the consequences of his guilty plea, including the waiver of his constitutional rights. The circuit court further found that Burkhalter had knowingly and voluntarily entered his guilty plea. As reflected in the record, Burkhalter admitted to the facts of his two prior felony convictions while under oath during his guilty

4

plea. In addition, Burkhalter admitted to the facts necessary to satisfy the elements of Count III of his indictment for unlawful possession of a firearm or a weapon by a convicted felon. Based upon the facts and evidence presented during the plea hearing, the circuit court found Burkhalter guilty and sentenced him as a habitual offender.

¶10. For Burkhalter's crime of possession of a firearm or a weapon by a convicted felon, section 97-37-5 provides a maximum prison term of ten years. The application of section 99-19-81 to Burkhalter's conviction as a habitual offender should have resulted in Burkhalter receiving a ten-year sentence without parole or early release. In its sentencing order, the circuit court noted the State's recommendation that Burkhalter serve a ten-year sentence day for day in the custody of the Mississippi Department of Corrections (MDOC). However, the circuit court imposed only a two-year sentence on Burkhalter, to be served in MDOC's custody, without the possibility of parole or early release. The circuit court also gave Burkhalter credit for time served. Therefore, on its face, the record reflects that the circuit court imposed a more lenient sentence on Burkhalter than the sentence required by statutory law.

¶11. On October 11, 2013, Burkhalter filed a motion with the circuit court entitled "Motion for Post-Conviction Collateral Relief." The circuit court treated Burkhalter's filing as a motion to reconsider his sentence or for a judgment notwithstanding the verdict and denied the motion. Burkhalter then filed a PCR motion with the Mississippi Supreme Court. The supreme court dismissed the motion after finding that Burkhalter was required to file any PCR motion in the circuit court. On May 12, 2014, Burkhalter filed an unsuccessful request

5

for the supreme court to reconsider the dismissal of his PCR motion. On May 22, 2014, with only a few months left on his sentence, Burkhalter filed the instant PCR motion with the circuit court to challenge the legality of his sentence as a habitual offender.[1] Aggrieved by the circuit court's denial of his PCR motion, Burkhalter now appeals to this Court.

## STANDARD OF REVIEW

¶12. "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if it is clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Carson v. State*, 161 So. 3d 153, 155 (¶2) (Miss. Ct. App. 2014) (citing *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012)).

## DISCUSSION

¶13. The only issue Burkhalter raises on appeal is whether the circuit court illegally sentenced him as a habitual offender. Burkhalter concedes that the circuit court sentenced him, as a habitual offender, to an illegally lenient sentence. Burkhalter also admits that he previously received two felony convictions in Florida for aggravated assault and battery with a deadly weapon. Even so, Burkhalter contends the circuit court erroneously sentenced him as a habitual offender because his prior convictions failed to arise out of separate incidents at different times as required by section 99-19-81.

¶14. As the record reflects, Burkhalter was arrested for committing aggravated assault and then spent several hours in jail until he paid his bond. Following his release from custody,

___

[1] As previously discussed, Burkhalter received a two-year sentence on September 10, 2013, and he received credit for time served.

6

Burkhalter then committed battery with a deadly weapon. On appeal, Burkhalter fails to acknowledge the legal proceedings that occurred between the commission of his two crimes. Instead, Burkhalter argues the eighteen or nineteen hours that elapsed between his two arrests failed to provide a sufficient "cooling-off" period. Burkhalter further fails to acknowledge that his prior convictions arose from separate crimes. He instead asserts that the second altercation with his wife, committed after his release from custody, constituted a continuation of the first altercation. Alleging that his "Florida crimes arose out of the same set of circumstances with the same person" and involved the "same nucleus of events in less than a [twenty-four] hour period[,]" Burkhalter asks this Court to vacate the habitual-offender portion of his sentence.

¶15. With regard to habitual-offender sentencing, section 99-19-81 states:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

¶16. The State argues that Burkhalter's prior felony convictions satisfy the following requirements for habitual-offender sentencing: (1) the underlying charges arose from two different offenses; (2) the two offenses occurred at different times; (3) the underlying charges were separately brought and possessed different cause numbers; and (4) Burkhalter served more than a year in a Florida penal institution on each sentence. Furthermore, as discussed, eighteen or nineteen hours elapsed between Burkhalter's two crimes as he went through a

7

number of legal proceedings, including jail time and the setting and payment of his bond.

¶17.   "To qualify as a predicate felony for purposes of [s]ection 99-19-81, both prior convictions must arise out of separate incidents, meaning they must be separate from each other and from the felony for which the defendant is being sentenced." *Drummer v. State*, 167 So. 3d 1180, 1183 (¶7) (Miss. 2015).  Our precedent recognizes "that crimes occurring on the same day may nevertheless be 'separate incidents at different times' for [the] purpose of habitual sentencing." *Id.* at 1184 (¶10) (quoting *Jackson v. State*, 518 So. 2d 1219, 1220 (Miss. 1988)).  *See also Buckley v. State*, 511 So. 2d 1354, 1359 (Miss. 1987) ("A prior offense may be considered under the statute even if [it] occurred on the same day as the instant offense as long as the two charges arose from 'separate incidents.'" (citing *Crawley v. State*, 423 So. 2d 128, 128 (Miss. 1982))).  Thus, in addressing Burkhalter's assignment of error, we must determine whether his prior felony convictions arose out of separate incidents at different times or whether, as Burkhalter contends, the charges arose out of a common nucleus of operative fact and constituted one continuous transaction.

¶18.   In its recent opinion in *Drummer*, the supreme court addressed whether the defendant's prior felony-fleeing conviction arose out of the same common nucleus of operative fact as his current conviction and failed to satisfy section 99-19-81's requirements for enhanced sentencing. *Drummer*, 167 So. 3d at 1181-82 (¶1).  A jury convicted Drummer of two counts of grand larceny and one count of attempted grand larceny.  *Id.* at 1181 (¶1). The facts revealed that, after committing the larcenies, Drummer fled from law enforcement when they attempted to pull him over for running a stop sign.  *Id.*  Following Drummer's

8

conviction for grand larceny and attempted grand larceny, the circuit court sentenced Drummer as a habitual offender under section 99-19-81. *Id.* Drummer's felony-flight conviction was one of the predicate felonies used to enhance his sentence. *Id.* at 1181-82 (¶1). The supreme court held, however, that "Drummer's flight from police arose from the same nucleus of operative facts as the larcenies for which he was convicted and therefore should not have been used as a predicate felony pursuant to [s]ection 99-19-81." *Drummer*, 167 So. 3d at 1182 (¶1). Accordingly, the supreme court vacated Drummer's habitual-offender sentence and remanded the case to circuit court so Drummer could be resentenced as a nonhabitual offender. *Id.*

¶19. In previously addressing the statutory requirements for habitual-offender sentencing, the supreme court provided the following guidance to determine whether incidents are separate from each other:

> A person who on three separate occasions has pursued a criminal design should be dealt with severely, more so than on his first or even second offense. Three separate criminal acts suggest a likely-to-be-repeated habit of behavior such that the community ought intervene. But before such behavior should be labeled habitual, it would seem that the events should be sufficiently separate that the offender's criminal passions may have cooled so that he has time to reflect, and if after such an interval the individual forms and actualizes a new criminal design, and then does so a third time, he should be met with all of the power of the public force. Conversely, two offenses committed in rapid succession do not suggest the same repetitiveness of criminal design such that the offender may be thought predictably habitual thereafter, or deserving of severe sanction.

*Pittman v. State*, 570 So. 2d 1205, 1206 (Miss. 1990).

¶20. Applying our precedent to this case, we find the record reflects that Burkhalter's two prior felony convictions in Florida arose from separate incidents and at different times, as

9

required by Mississippi's habitual-offender statute. *See* Miss. Code Ann. § 99-19-81. The supreme court has found separateness and difference in time to be central to determining whether offenses satisfy the statutory requirements for habitual-offender sentencing. *See Pittman*, 570 So. 2d at 1206. The *Pittman* court explained "that the events should be sufficiently separate that the offender's criminal passions may have cooled so that he has time to reflect . . . ." *Id.* If, after such an interval, the individual forms and actualizes a new criminal intent or design and then commits another offense, the offenses constitute two separate offenses. *Id.* The *Pittman* court also acknowledged that section 99-19-81 requires no minimum interval of time between offenses before they can be considered separate and distinct. *Id.* In addressing the statutory requirements for habitual-offender sentencing, the *Pittman* court acknowledged precedent where the defendant's prior convictions arose out of offenses that occurred on the same date but nevertheless constituted "separate incidents at different times" within the meaning of section 99-19-81. *Pittman*, 570 So. 2d at 1207.[2]

¶21. After reviewing the record and relevant caselaw, we find no abuse of discretion in the circuit court's finding that Burkhalter's prior convictions arose out of separate incidents at different times and qualified Burkhalter as a habitual offender under section 99-19-81. Police arrested Burkhalter on April 27, 1989, after he committed aggravated assault against his wife. Burkhalter then remained in police custody until he paid his bond. The next day,

---

[2] The supreme court cited the following cases to support its finding: *Nicolaou v. State*, 534 So. 2d 168, 173 (Miss. 1988); *Jackson v. State*, 518 So. 2d 1219, 1219 (Miss. 1988); and *Burt v. State*, 493 So. 2d 1325, 1329 (Miss. 1986). *See also Garrison v. State*, 950 So. 2d 990, 995 (¶19) (Miss. 2006) (recognizing that prior felony convictions arising out of incidents that occurred on the same date can still constitute separate incidents at different times).

10

on April 28, 1989, Burkhalter got into a second altercation, which resulted in his conviction for battery with a deadly weapon. As the record clearly establishes, about eighteen or nineteen hours elapsed between Burkhalter's arrest for aggravated assault and his new and distinct offense of battery with a deadly weapon.

¶22. Based on our review, we find Burkhalter's two prior convictions resulted from two separate forays into criminal activity. *See Pittman*, 570 So. 2d at 1206-07. Rather than occurring in rapid succession and arising out of the same chain of events with a singular criminal intent or a common nucleus of operative fact, Burkhalter's two crimes were separated by almost nineteen hours and law-enforcement intervention. As a result, the record reflects that sufficient time elapsed, and sufficient intervention occurred, to allow Burkhalter's passions to cool so he could reflect before forming and actualizing a new criminal design. We therefore find no merit to Burkhalter's argument that the prior convictions used to enhance his sentence failed to arise out of separate incidents at different times.

¶23. While not raised by the State as an error, we also recognize that, even though the circuit court imposed an illegally lenient sentence on Burkhalter, "[a] convicted felon may not quietly enjoy the benefits of an illegally lenient sentence . . . and later attack the sentence when suddenly it is in his interest to do so." *Crosby v. State*, 16 So. 3d 74, 80 (¶12) (Miss. Ct. App. 2009) (quoting *Thomas v. State*, 861 So. 2d 371, 374 (¶9) (Miss. Ct. App. 2003)). Instead, "when a defendant receives a[n] illegally lenient sentence, it is considered harmless error as the defendant suffered no prejudice from the imposition of the sentence." *Id.* (citing

11

*Sweat v. State*, 912 So. 2d 458, 461 (¶9) (Miss. 2005)). We therefore find that no reversible error resulted from the circuit court's imposition of an illegally lenient sentence against Burkhalter.

¶24. **THE JUDGMENT OF THE STONE COUNTY CIRCUIT COURT DENYING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO STONE COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**