# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00885-COA

**JIMMY JOE TUTOR A/K/A JIMMY TUTOR**        **APPELLANT**
**A/K/A JIMMY J. TUTOR**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/19/2017 |
| TRIAL JUDGE: | HON. JOHN ANDREW GREGORY |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: BENJAMIN SUBER |
| |    GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KATY TAYLOR GERBER |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 11/06/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.

### BARNES, J., FOR THE COURT:

¶1.     Jimmy Joe Tutor was convicted of burglary of a dwelling and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015).  Appealing his conviction, Tutor argues that his sentence as a habitual offender was illegal because the underlying offenses to prove his habitual-offender status arose from the same incident and that the verdict was against the overwhelming weight of the evidence.  We find no error in the trial court's ruling that his underlying felonies were separate and distinct crimes, supporting

Tutor's habitual-offender status. With regard to the weight-of-the-evidence argument, this issue is procedurally barred because Tutor failed to file a motion for a new trial. Alternatively, this argument is without merit. Therefore, finding no error, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. On November 25, 2013, Preston McGreger returned to his home in Calhoun County, Mississippi, to find that it had been burglarized. The front door frame was busted, and three televisions (two Sanyos and one Vizio) and a briefcase containing personal documents were missing. Preston's wife, Candi, reported the burglary to the sheriff's department. Later that evening, while searching Craigslist, Preston saw a listing for a package deal with three televisions matching the description of the ones stolen from his home. The phone number associated with the listing was from Water Valley, Mississippi. Candi had a friend call to inquire about the televisions and to set up a meeting to buy them at the Dollar General store in Vardaman. Candi also contacted Sheriff's Deputy Juston Robertson to apprise him of the situation.

¶3. When the sellers—Tutor and Jessica Leister, Tutor's girlfriend— arrived at the Dollar General, Deputy Robertson and another officer approached Leister's vehicle, a tan Ford Explorer, and informed the couple that they were investigating a burglary. It was determined that the television in the vehicle was not one of the televisions stolen from the McGregers, but because the television listed for sale on Craigslist was a completely different model,

2

Deputy Robertson became suspicious and took Tutor and Leister in for questioning. He obtained a search warrant for Leister's home in Water Valley, where law enforcement recovered three televisions and a briefcase. The McGregers identified the recovered items as the ones stolen from their home.

¶4. Tutor and Leister were indicted for burglary of a dwelling on April 2, 2014. Pursuant to a plea agreement with the State, Leister entered a guilty plea in exchange for her testimony at Tutor's trial, which was held on April 18-19, 2017. The McGregers both testified as to the events that transpired as described above. Tanner Bailey, a neighbor of the McGregers, also testified that on the day of the burglary, he saw a tan Ford Explorer about 50 yards from the McGregers' home and a woman standing in front of the vehicle.

¶5. Leister testified that in November 2013, Tutor had been living with her in Water Valley for approximately six months. They were visiting his family in Calhoun County that day and went for a drive. Tutor told her to stop at a house, saying he knew the people would not be home. She said he brought three televisions out of the home and put them into her car. Regarding the briefcase, she said Tutor claimed his fingerprints were on it. Later, when Candi's friend called about the televisions and began asking a lot of questions, Leister became nervous; so she suggested to Tutor that they take her television instead of the stolen ones to meet the buyer.

¶6. Defense counsel moved for a directed verdict, which the trial court denied, and the defense rested. After the jury returned a guilty verdict, defense counsel made an ore tenus

3

motion for a judgment notwithstanding the verdict (JNOV). The court denied the motion, and requested that counsel file a written motion for the purposes of the timing of the appeal. However, no posttrial motions were filed. On June 22, 2017, the trial court entered an order nunc pro tunc to April 20, 2017, granting Tutor a sixty-day "extension of any deadlines and enlargement of time to file any posttrial motions or notices." Tutor filed a notice of appeal on June 27, 2017. His arguments on appeal are that his sentence as a habitual offender was illegal and the verdict was against the overwhelming weight of the evidence.

## DISCUSSION

### I. Whether the sentence as a habitual offender was illegal.

¶7. On August 26, 2016, the State moved to amend the indictment to charge Tutor as a habitual offender under section 99-19-81, noting he had two prior felonies: burglary of a dwelling and uttering a forgery.[1] On December 23, 2007, Tutor had stolen checks from the home of Bill and Shirley Edmonson. The following day, he presented one of the fraudulent checks for payment. At the pretrial hearing on the motion to amend, defense counsel argued the charges "were not separate incidences, but a part of the ongoing crime," noting that the victims were the same and the incidents occurred within a twenty-four hour period. The State responded that the crimes were "separate and distinct." Finding that the crimes occurred on different days and were, therefore, "two separate and distinct crimes," the trial court granted the motion to amend the indictment.

---

[1] Tutor entered a guilty plea to both charges.

4

¶8.     On appeal, Tutor reasserts his claim that the two felonies arose out of the same incident; so they cannot both be used to support his habitual-offender status under section 99-19-81.  "To qualify as a predicate felony for purposes of section 99-19-81, both prior convictions must arise out of separate incidents, meaning they must be separate from each other and from the felony for which the defendant is being sentenced."  *Burkhalter v. State*, 179 So. 3d 67, 71 (¶17) (Miss. Ct. App. 2015) (quoting *Drummer v. State*, 167 So. 3d 1180, 1183 (¶7) (Miss. 2015)).  The Mississippi Supreme Court has held:

> [T]he events should be sufficiently separate that the offender's criminal passions may have cooled so that he has time to reflect, and if after such an interval the individual forms and actualizes a new criminal design, and then does so a third time, he should be met with all of the power of the public force.

*Pittman v. State*, 570 So. 2d 1205, 1206 (Miss. 1990).  Tutor robbed the Edmonsons on the 23rd and presented the fraudulent check to a local convenience store the following day, the 24th.  We find that sufficient time had passed between the burglary and the uttered forgery that Tutor had time to reflect and to form "a new criminal design."

¶9.     Furthermore, no evidence was presented that Tutor committed the burglary to obtain the checks.  *Cf. Bergeron v. State*, 60 So. 3d 212, 216 (¶11) (Miss. Ct. App. 2011) (finding a defendant's prior convictions did not support habitual-offender status because he had only one intent when he broke into a car dealer's office, stole a key, and used the key to steal a vehicle).  As the trial judge stated, after the burglary had been committed, "Tutor had the opportunity to either use that check or not use that check the next day, and he chose to use it."  We agree with the trial court that the two crimes were "separate and distinct," and we

5

find no error in court's ruling to grant the State's motion to amend the indictment charging Tutor as a habitual offender.

## II. Whether the verdict is against the overwhelming weight of the evidence.

¶10. Tutor contends that the verdict is against the weight of the evidence, noting none of the stolen items were found in his possession and the only evidence of his involvement in the burglary "is that of a disgruntled drug-addicted ex-girlfriend." The State argues that Tutor is procedurally barred from raising this claim because he failed to assert this claim to the trial court. "There are certain errors that must be raised in front of the circuit judge in a motion for a new trial, including challenges to the weight of the evidence." *Davis v. State*, 75 So. 3d 569, 572 (¶14) (Miss. Ct. App. 2011) (citing *Jackson v. State*, 423 So. 2d 129, 132 (Miss. 1982)).

¶11. At trial, defense counsel moved for a JNOV, asserting: "Judgment notwithstanding the verdict, we would make a motion for the Court to set aside the verdict." However, "a motion for [a] JNOV challenges the sufficiency of the evidence presented to the jury, not its weight." *Qualls v. State*, 947 So. 2d 365, 373 (¶25) (Miss. Ct. App. 2007) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). As noted, the trial court requested that counsel file a written motion for a JNOV and later granted Tutor leave to file *any* posttrial motions. He failed either to reassert his claim challenging the sufficiency of the evidence with a motion for a JNOV or to assert a claim regarding the weight of the evidence in a motion for a new trial. "The failure to preserve a matter by motion for new trial . . . may also serve as

6

a procedural bar to its consideration by an appellate court." *Alonso v. State*, 838 So. 2d 309, 313 (¶10) (Miss. Ct. App. 2002) (citing *Seals v. State*, 767 So. 2d 261 (¶6) (Miss. Ct. App. 2000)). As the record contains no motion for a new trial, Tutor is procedurally barred from raising this issue.

¶12. Notwithstanding the procedural bar, we find the weight of the evidence supports the verdict. Leister testified that she and Tutor were in Calhoun County that day visiting Tutor's family and that Tutor stole the televisions from the McGregers' home. Tutor was from Calhoun County and knew the area. Also, although Tutor claims that he did not reside where the stolen items were found, Leister testified that Tutor had been living at her home in Water Valley for several months. Tutor was also with Leister at the Dollar General to sell the television.

¶13. Accordingly, we affirm the trial court's judgment.

¶14. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**